(78 Misc. Rep. 538.)

### PENSABENE v. F. & J. AUDITORE CO.

(Supreme Court, Special Term, Kings County. December 13, 1912.)

1. MASTER AND SERVANT (§ 86*)—DEATH OF SERVANT—WORKMEN'S COMPENSATION LAW—WHAT LAW GOVERNS.

In an action against a master for death of a servant under a New Jersey workmen's compensation act (P. L. 1911, p. 134), based on the theory of implied contract, the lex loci contractus, which in an accident case may or may not be the lex loci delicti, controls the rights of the parties; and the right of action, being transitory, exists not only where it arises, but in every place in which the proper parties for its enforcement can be found.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 137; Dec. Dig. § 86.*]

2. MASTER AND SERVANT (§ 86*)—DEATH OF SERVANT—WORKMEN'S COMPENSATION ACT—ENFORCEMENT—COMITY—PUBLIC POLICY.

The New Jersey workmen's compensation act (P. L. 1911, p. 134), providing for the recovery of compensation for injury to or death of a servant on the theory of implied contract, whenever the injury resulted from the master's negligence or default, and abolishing the defenses of fellow servant and assumed risk, is not contrary to the public policy of the state of New York, and is therefore enforceable therein.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 137; Dec. Dig. § 86.*]

Action by Francesco Pensabene, as administrator of the goods, chattels, and credits of Antonio Pensabene, deceased, against the F. & J. Auditore Company. On motion for an order sustaining a demurrer to the complaint. Denied.

The defendant moves, under section 976 of the Code of Civil Procedure, for an order sustaining a demurrer to the complaint, on the grounds that the court has no jurisdiction of the subject of the action and that the complaint does not state facts sufficient to constitute a cause of action. The complaint is based upon the "elective compensation" plan of the Workmen's Compensation Law of the state of New Jersey, passed in 1911. P. L. 1911, p. 134.

The deceased, a resident and citizen of New York, was employed by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendant in New Jersey, and in such employ was so injured that he afterwards died. The complaint alleges that the accident occurred without fault or negligence on the part of the deceased, but solely by reason of the negligence of the defendant, which consisted in the negligence of its employés in permitting barrels to be so carelessly and improperly fastened, during the work of loading a vessel, that one of the barrels fell out of the fastening, down the hatchway, into the hold of the vessel, and struck the deceased. The defendant is a domestic corporation, and its charter provides that it shall have power to conduct its business in any of the states of the United States, "but always subject to the laws thereof."

The plaintiff further sets out a full copy of the New Jersey statute, which went into effect on the 4th day of July, 1911, and is entitled: "An act prescribing the liability of an employer to make compensation for injuries received by an employé in the course of employment, establishing an elective schedule of compensation, and regulating procedure for the determination of liability and compensation thereunder." The general scheme of this law will be indicated by the following extracts:

"Section I. Compensation by Action at Law.

"1. When personal injury is caused to an employé by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employé was himself not willfully negligent at the time of receiving such injury, and the question of whether the employé was willfully negligent shall be one of fact to be submitted to the jury, subject to the usual superintending powers of a court to set aside a verdict rendered contrary to the evidence.

"2. The right to compensation as provided by section I of this act shall not be defeated upon the ground that the injury was caused in any degree by the negligence of a fellow employé, or that the injured employé assumed the risks inherent or arising from the failure of the employer to provide and maintain safe premises and suitable appliances, which said grounds of defense are hereby abolished."

"5. In all actions at law brought pursuant to section I of this act, the burden of proof to establish willful negligence in the injured employé shall be upon the defendant."

"Section II. Elective Compensation.

"7. When employer and employé shall by agreement, either express or implied, as hereinafter provided, accept the provisions of section II of this act, compensation for personal injuries to or for the death of such employé by accident arising out of and in the course of his employment shall be made by the employer without regard to the negligence of the employer, according to the schedule contained in paragraph eleven, in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury, and the burden of the proof of such fact shall be upon the employer.

"8. Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in section II of this act, and an acceptance of all the provisions of section II of this act, and shall bind the employé himself and for compensation for his death shall bind his personal representatives, his widow and next of kin, as well as the employer, and those conducting his business during bankruptcy or insolvency.

"9. Every contract of hiring made subsequent to the time provided for this act to take effect shall be presumed to have been made with reference to the provisions of section II of this act, and unless there be as a part of such contract an express statement in writing, prior to any accident, either in the contract itself or by written notice from either party to the other, that the provisions of section II of this act are not intended to apply, then it shall be presumed that the parties have accepted the provisions of section II of this act and have agreed to be bound thereby. In the employment of minors, section II shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor."

"Section III. General Provisions.

"24. * * * Section I of this act shall not apply in cases where section II becomes operative in accordance with the provisions thereof, but shall apply in all other cases, and in such cases shall be in extension of the common law."

Plaintiff further alleges that the weekly average earnings of the deceased amounted to $20 per week, and that in computing under the statute the compensation for the next of kin of a deceased employé leaving a widow and one child (as deceased did) the employer shall pay 40 per cent. of the wages during 300 weeks. Finally, the complaint alleges that the sum of $2,400 is due *by reason of the implied contract entered into in New Jersey, at the time of the deceased's employment in New Jersey.*

Charles A. Ludlow, of New York City, for plaintiff.
Samuel Greason, Jr., of New York City, for defendant.

KELBY, J. The defendant argues that the New Jersey statute is contrary to the public policy of the state of New York, and asserts that our courts will not enforce a cause of action under a foreign statute when a similar New York statute has been held to be unconstitutional, as in Ives v. South Buffalo Ry. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156.

[1] The lex loci contractus, which may or may not be, in an accident case, the lex loci delicti, controls the rights of parties (Schweitzer v. H. A. P. A. Gesellschaft, 149 App. Div. 900, 134 N. Y. Supp. 812), and where the right of action is transitory, as in the case at bar, it exists, not only where it arises, but in every place in which the proper parties for its enforcement can be found (Leonard v. Columbia Steam Navigation Co., 84 N. Y. 48, 38 Am. Rep. 491; Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439).

[2] The courts of this state have always enforced the rights of citizens acquired in another common-law state, because the necessary similarity of laws was conclusive evidence that the foreign law was not against the public policy of our state. So it has been generally held that where a *statute,* giving the cause of action in the state in which the accident happened, was similar to an existing statute in the state where the action was brought, that was evidence of the fact that the foreign statute did not conflict with the public policy of the latter state, and the action could be maintained. See Wooden v. Western New York & P. R. R. Co., 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803; Higgins v. Central New England, etc., R. R. Co., 155 Mass. 176, 29 N. E. 534, 31 Am. St. Rep. 544; Boston & Maine R. R. v. Hurd, 56 L. R. A. 193, where many cases are collated and discussed in a discriminating note. See, also, Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; Northern Pacific R. R. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958.

The rule governing the question of the enforcement, in the courts of New York, of a right of action arising under, or created by, a foreign statute, has been lately stated in these terms:

"In cases of other than penal actions, the foreign law, if not contrary to our public policy, or to abstract justice or pure morals, or calculated to injure the state or its citizens, shall be recognized and enforced here, if we

have jurisdiction of all necessary parties, and if we can see that, consistently with our own forms of procedure and law of trials, we can do substantial justice between the parties." Zeikus v. Florida East Coast Railway Co., 138 N. Y. Supp. 478 (Appellate Division, Second Department, November, 1912, writing by Mr. Justice Carr).

How, within the liberal test above outlined, does the New Jersey statute offend our public policy? It is suggested that the decision in Ives v. South Buffalo Railway Co., supra, indicates or establishes a public policy in New York against "workmen's compensation acts." The Court of Appeals, in the opinion in the Ives Case, certainly nowhere said, nor anywhere decided, that the general purpose and theory of the workingmen's compensation movement, and the statutory recognition and advancement thereof, were against the public policy of the state of New York.

It is hardly fair to argue the existence of a general public policy, antagonistic to legislation, which aims to make the human wear and tear of production part of the producing cost, from a judicial determination that in one statute, relating to the subject, some unconstitutional feature was found. Error proverbially lurks in generalities, and I do not think there should, or can be, any such generalization from the specific decision in the Ives Case. That decision was that an employer cannot be subjected to liability, or in effect penalized, unless he had violated some law or had been guilty of some fault, and that to impose a liability without regard to such basic principles was to take his property without due process of law. The evil which was pointed out in the statute considered in the Ives Case the New Jersey statute does not appear to present.

"The character of the duty owed by the master to the servant at common law is extended by the  *  *  *  act, but not so that the master is required in an action to respond in damages to liability without fault. Nothing can be recovered except damages for actual or lawfully imputed negligence." Sexton v. Newark Dist. Telephone Co., 34 N. J. Law J. 368, continued in 35 N. J. Law J. 8.

In this case, which is said, in the publication above, to be a test case, the constitutionality of the law was upheld in an opinion which does not conflict with the reasoning in the Ives Case, and that construction should control in the courts of this state. Leonard v. Columbia Steam Nav. Co., 84 N. Y. 48, 38 Am. Rep. 491. Apparently it was—

"to avoid the constitutional question  *  *  *  which is discussed in the Case of Ives  *  *  *  that the New Jersey Legislature adopted an elective principle, which has been largely followed in other states; that is, both employer and employé are presumed to have elected to have waived their common-law rights of actions and defenses, unless they have entered into a contract to the contrary, or unless either has given a notice in writing that he will not be bound by the provisions of the compensation act. New Jersey seems to have been the first state to have grasped and utilized this principle as a possible escape from the constitutional question raised in the Ives Case." Bradbury's Workingmen's Compensation, pp. 156, 157.

The elective compensation provided by the New Jersey statute is based upon a contract implied from the neglect or failure of the parties to express a purpose at the time of their contracting to rest upon

their common-law rights as modified by other provisions of the statute. The option to accept one or the other forms of remedy is equally open to both parties at the time of their contracting, and before any rights have accrued by accident. There seems to be no undue compulsion on either side to accept the elective compensation features. Certainly none was suggested in the brief submitted to me.

It has been doubted whether to consider the existence of a local statute, as the only evidence of a local public policy, does not unduly restrict the principle of comity, upon which principle the enforcement of the foreign law is based. 2 Wharton on Conflict of Laws (3d Ed.) 1118, and some·recognition of that view may perhaps be found in decisions wherein the absence of a local statute, prohibiting a matter, has been taken as evidence that the local public policy was not opposed thereto (Dammert v. Osborn, 140 N. Y. 30, at page 43, 35 N. E. 407). In New York there is, however, more than the absence of local prohibition against contracting as to the quantum of compensation in cases of accident. What the New Jersey statute has provided may be done by implied contract, a New York statute has provided may be done by express contract. Section 205, Labor Law (chapter 352, Laws 1910).

The present complaint alleges that the accident occurred solely by reason of the negligence of the defendant, consisting *in the negligence of its employés.* Since the action is based upon those provisions of ·the statute.by .which the elective compensation is deemed agreed·to, "without regard to the negligence of the employer," the pertinence of this allegation is not apparent; but it serves to point out that under the New Jersey statute the fellow servant and contributory negligence defenses are abolished. This certainly is in accord with the public policy of New York. In the Ives Case the "fellow servant" rule and the "contributory negligence" rule were declared to be "nothing more" than common-law "doctrines" (201 N. Y. at page 289, 94 N. E. 431, 34 L.·R. A. [N. S.] 162, Ann. Cas. 1912B, 156), and the power and policy to limit·such were expressly affirmed and upheld. Chief Judge Cullen said:

"I concede that the Legislature may abolish the rule of fellow servant as a defense to an action by employé against employer. Indeed, we have decided that in upholding the so-called Barnes Act. Schradin v. N. Y. C. & H. R. R., 194 N. Y. 534, 87 N. E. 1126. I concede that the Legislature may also abolish as a defense the rule of assumption of risk and that of contributory negligence, unless the accident proceeds from the willful act of the employer."

In addition there are existing statutes which further evidence this public policy of our state. For example, there is section 42a of the Railroad Law, which declares the acts of persons who were formerly regarded as fellow servants to be the acts of vice principals, and creative of liability for injury resulting. In Schweitzer v. Hamburg-American Line, 138 N. Y. Supp. 944, the Sea Accident Insurance Law of the empire of Germany was upheld, in this forum, when presented defensively, as a bar to an action; Mr. Justice Kapper reaching that conclusion on the apparent authority of a prior phase of the same case (149 App. Div. 900, 134 N. Y. Supp. 812), and also by reasoning which

applies to and supports my conclusion in the present case. A similar ruling, I note, has also been made by Mr. Justice Cohalan, in overruling a demurrer to defenses, setting up the elective compensation plan of the New Jersey statute, as a bar to an action. Albanese v. Stewart, 138 N. Y. Supp. 942.

I conclude, therefore, that the complaint sets forth a good cause of action, of which the court has jurisdiction, and that the demurrer should be overruled with the usual leave, on payment of costs.