[Civil No. 1331. Filed March 17, 1914.]

[139 Pac. 465.]

# CONSOLIDATED ARIZONA SMELTING COMPANY, a Corporation, Appellant, v. JOHN UJACK, Appellee.

1. MASTER AND SERVANT—INJURIES TO SERVANT—REMEDIES.—Under the Arizona law, an injured servant may elect to sue to enforce the master's common-law liability relieved of the defense of fellow-servant, with the right to have the defenses of contributory negligence and assumed risk left to the jury, as provided by Constitution, article 18, sections 4, 5, or he may sue under the employers' liability law (Laws 1912, c. 89), applying to hazardous occupations where the injury or death is not caused by the employee's own negligence, or he may elect to enforce compulsory compensation, under Constitution, article 18, section 8 (Laws 1912, 1st Sp. Sess. c. 14), applicable to especially dangerous occupations, by which a recovery may be had for injuries occasioned without fault on the part of the employer.

2. Master and Servant—Injuries to Servant—Workmen's Compensation Act—Remedies—Election—Time.—Workmen's compensation law (Laws 1912, 1st Sp. Sess., c. 14) section 14, provides that, ten days after the act takes effect, it shall be held in law that all workmen then in the employ and all workmen thereafter employed by an employer at manual and mechanical labor of the kinds defined in section 3 are employed and working under the act, and that the employer and workman shall alike be bound by and shall have each and every benefit and right given in the act, the same as if a mutual contract to that effect was entered into between the employer and the workman at any time before the happening of the accident. *Held*, that, under Constitution, article 18, section 8, providing that the legislature shall enact a workmen's compulsory compensation law, provided that it shall be optional with the employee to settle for such compensation or retain the right to sue the employer as provided by the Constitution, such act must be construed as regulative of the respective rights and obligations of master and servant in those cases where injury results and the employee exercises his option to accept compensation and the employer refuses to pay, and does not require the employee to elect as to which remedy he will adopt prior to the injury.

3. Master and Servant—Workmen's Compensation Act—Remedies—Adoption.—Under the workmen's compensation law (Laws 1912, 1st Sp. Sess., c. 14), section 14, declaring that a suit brought by a workman shall be held an election to pursue such remedy exclusively, an injured employee is at liberty to pursue any of the remedies provided by law until he adopts one by instituting suit for redress, when the one adopted becomes exclusive.

[As to constitutionality of workmen's compensation acts, see note in Ann. Cas. 1912B, 174. As to who is "workman" within meaning of such acts, see note in Ann. Cas. 1913C, 28. As to what is accident arising out of and in course of employment within such acts, see note in Ann. Cas. 1914B, 498.]

APPEAL from a judgment of the Superior Court of the County of Yavapai. Frank O. Smith, Judge. Affirmed.

The facts are stated in the opinion.

Messrs. Anderson & Lamson, for Appellant.

Mr. E. S. Clark and Mr. J. Ralph Tascher, for Appellee.

ROSS, J.—This action involves the right of the appellee, the employee, to recover damages for personal injuries alleged

to have been occasioned by the negligence of the appellant, the employer.

•Among the defenses interposed, and it is the only one relied upon here, is that the rights of appellee are found in and measured by the compulsory compensation law, as contained in chapter 14, Laws of Arizona, First Special Session of 1912. It is conceded that appellee at the time of his injury was engaged in a hazardous occupation such as named in the compulsory compensation law, and in the employers' liability law (chapter 89, First Session Legislature of Arizona of 1912).

Under the laws of Arizona, an employee who is injured in the course of his employment has open to him three avenues of redress, any one of which he may pursue according to the facts of his case. They are: (1) The common-law liability relieved of the fellow-servant defense and in which the defenses of contributory negligence and assumption of risk are questions to be left to the jury. Const., secs. 4, 5, art. 18. (2) Employers' liability law, which applies to hazardous occupations where the injury or death is not caused by his own negligence. Const., sec. 7, art. 18. (3) The compulsory compensation law, applicable to especially dangerous occupations, by which he may recover compensation without fault upon the part of the employer. Const., sec. 8, art. 18.

Prior to the adoption of the Constitution, an employee who had suffered an injury, or his personal representative, in case of death, had but one remedy—the common-law liability with all of its defenses of fellow-servant, contributory negligence, and assumed risk. The Constitution declared for this state a different and more advanced as well as humane public policy, one in consonance with the present day enlightened thought and conscience by providing for the employers' liability and compulsory compensation in all hazardous or especially dangerous employments.

The appellee contends that he was entitled, under the facts of the case, to maintain his suit for personal injury under the employers' liability law, while the appellant insists that his exclusive remedy was to be found in the compulsory compensation law. The controverted question may be disposed of by a correct answer to this question: Does the compulsory compensation act, when not disaffirmed prior to injury, limit the remedy of the injured employee to the compensation provided

in that act, or may he after the injury elect between his remedy under the act and the other remedies of the common-law liability or employers' liability? The appellee was in the employment of appellant at the time the workmen's compensation law took effect, and had been in such employment for more than ten days thereafter when he was injured. Neither the employer nor the employee had taken any affirmative action in recognition of the law, either to approve or repudiate it.

The section of the Constitution and the sections of the workmen's compulsory compensation act bearing upon the question are as follows:

"Sec. 8. The legislature shall enact a workmen's compulsory compensation law applicable to workmen engaged in manual or mechanical labor in such employments as the legislature may determine to be especially dangerous, by which compulsory compensation shall be required to be paid to any such workman by his employer, if in the course of such employment personal injury to any such workman from any accident arising out of, and in the course of, such employment is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its officers, agents, or employee, or employees, to exercise due care, or to comply with any law affecting such employment; provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution." Const., art. 18.

Workmen's compulsory compensation act:

"Sec. 4. In case such employee or his personal representative shall refuse to settle for such compensation (as provided in section 8 of article 18 of the state Constitution) and chooses to retain the right to sue said employer (as provided in any law provided for in section 7, article 18 of the state Constitution) he may so refuse to settle and may retain said right." Paragraph 3166, Ariz. Rev. Stats.

"Sec. 7. When, in the course of work in any of the employments described in section 3 above, personal injury by accident arising out of and in the course of such labor, service, or employment, is caused to or suffered by any workman

engaged therein, by any risk or failure specified in section 2 hereof, then such employer shall be liable to and must make and pay compensation to the workman injured, and his personal representative, when death ensues, for the benefit of the estate of the deceased, for such injury at the rates and in the manner hereinafter set out in this act; provided, . . . and provided, further, that the employer shall not be liable under this act in case the employee refuses to settle for such compensation and retains his right to sue as provided in sec. 4 of this act." Paragraph 3169, *supra.*

"Sec. 14. This act shall take effect on the 1st day of September, 1912; and ten days from and thereafter, it shall be taken and held in law that all workmen then in the employ, and all workmen afterward employed by an employer at manual and mechanical labor of the kinds defined in section 3 of this act, are employed and working under this act, and the employer and workman shall alike be bound by and shall have each and every benefit and right given in this act the same as if a mutual contract to that effect were entered into between the employer and the workman at any time before the happening of the accident. It shall be lawful, however, for the employer or workman to disaffirm an employment under the provisions of this act by written contract between them, or by written notice by one to, and served upon, the other to that effect before the day of the accident; provided, such written contract does not provide for less compensation than as provided in this act. And in the absence of such written contract or written notice, served as above provided, it shall be taken and held that the employment and service is under this act; and the same shall be the sole measure of their respective rights and liabilities when and as provided in this act; provided, if, after the accident, either the employer or the workman shall refuse to make or accept compensation under this act or to proceed under or rely upon the provisions hereof for relief, then the other may pursue his remedy or make his defense under other existing statutes, the state Constitution, or the common law, except as herein provided, as his rights may at the time exist. Any suit brought by the workman for a recovery shall be held as an election to pursue such remedy exclusively." Paragraph 3176, *supra.*

It will be granted, of course, that, when conflicts occur in the above quotations from the Constitution and the statutes, the latter must give way. If the Constitution makes the compensation obligatory on the employer and optional as to the employee, to be exercised after the injury, that is the end of it. The Constitution says: ''The legislature shall enact a workmen's compulsory compensation law . . . by which compulsory compensation shall be required to be paid to any such workman by his employer. . . . Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution.'' This mandate to the legislature was carried out in the enacting of the workmen's compulsory compensation law, and, in doing so, there was created a new civil action heretofore unknown to our laws, available to the employee injured in the circumstances provided by law. It is optional with the injured employee as to whether he will accept the compensation. The employee's right to exercise this option being a constitutional right, legislation is impotent to deprive him of it. If the employee is never injured, he can make no claim for ''such compensation,'' nor exercise his option. After a cause of action has accrued to the employee, he may choose to accept the compensation allowed under this act, and the legislature is competent to prescribe the steps he shall take in its enforcement, but it cannot require him to elect, in advance of any injury, or the accrual of any right, which remedy he will pursue for redress.

Therefore, any expressions in the workmen's compulsory compensation act that seemingly require that the employee shall elect, in advance of injury, his remedy for redress should be read and construed in view of the constitutional provision permitting him to exercise his option, after the injury, either to claim compensation or sue for damages. While section 14 of the workmen's compulsory compensation act, *supra,* and the first proviso thereof, when taken alone, would seem to require the employee to elect his remedy for redress of injury in advance, or rather attempts to fix his status as under that act, in the absence of a disaffirmance of its provisions by written contract or by written notice before the accident, that construction, being repugnant to the constitutional provision permitting the exercise of his option after the injury, should

not be adopted, if it can be given a meaning that will harmonize with the constitutional provision. Reading section 14 in connection with other sections and provisions of the compulsory compensation act, as, for instance, section 4 thereof, which is to the effect that, if the employee, or his personal representative, refuses to settle for the compensation as provided, and chooses to retain his right to sue, he may do so; and, again, in section 7, *supra,* wherein it is said, "The employer shall not be liable under this act in case the employee refuses to settle for such compensation and retains his right to sue as provided in section 4 of this act," and in the last proviso to section 14 thereof, where it is said, that, if *after the accident* either the employer or employee shall refuse to settle under this act or to proceed or rely upon its provisions for relief, the latter may pursue his remedy under other existing statutes, the Constitution, or the common law, and the former may defend under the provisions of the other existing law, the Constitution, or the common law, as their respective rights may exist, except as herein provided—that is, when the employer refuses to settle, the employee may still exercise his option to claim compensation under this act—it seems clear that the legislature recognized and preserved the right of the employee to exercise his option after the accident and injury.

The last sentence of section 14, reads: "Any suit brought by the workman for a recovery shall be held as an election to pursue such remedy exclusively." This seems to us a plain declaration by the legislature that the employee is at liberty to pursue any of the remedies provided by law until he adopts one by instituting a suit for redress, when the one adopted becomes exclusive.

We therefore conclude that that part of section 14, *supra,* relied upon by the appellant as fixing the status of appellee under the workmen's compulsory compensation law, with the remedy therein provided as exclusive of all other remedies, is regulatory of the respective rights and obligations of the employer and employee in those cases where injury results, and the employee exercises his option to accept compensation, and the employer refuses to settle. This construction will harmonize it with the other provisions of the workmen's compulsory compensation law, and also the Constitution, and is

doubtless the meaning intended to be conveyed by the legislature.

The cases decided under the New Jersey compensation law, cited by appellant, do not aid us in the consideration of the question before us. The New Jersey act is not compulsory either on the employer or employee, but is elective or optional as to both. Our Constitution and compensation act make the compensation provided compulsory upon the part of the employer, and optional on the part of the employee. Just a line or two from two New York cases will sufficiently distinguish the New Jersey law from ours. In *Albanese* v. *Stewart,* 78 Misc. Rep. 581, 138 N. Y. Supp. 942, the court said: ''However, the New Jersey act is not a compulsory statute. It is a so-called optional or elective statute.'' In *Pensabene* v. *F. & J. Auditore Co.,* 78 Misc. Rep. 538, 138 N. Y. Supp. 947, it was said: ''The option to accept one or the other forms of remedy is equally open to both parties at the time of their contracting, and before any rights have accrued by accident.'' The New Jersey supreme court, in *Sexton* v. *Newark Dist. Tel. Co.,* 84 N. J. L. 85, 86 Atl. 451, 455, said: ''Under the act neither the employer nor the employee is bound to accept the provisions of section 2, unless he chooses to do so.'' It can be readily seen that the New Jersey compensation law is so widely different from ours as to make a judicial construction of it valueless when applied to our law. There is no option or election left to the employer under our Constitution and laws; for, as to him, they are compulsory.

Judgment affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Dissenting in Part.—The appellant assigns as error the order overruling its pleas in abatement, the order overruling its general demurrer, the order overruling its special demurrer, the order sustaining plaintiff's general demurrer to defendant's plea in bar, and the order refusing a new trial because of said erroneous rulings. Appellant claims but one proposition of law is raised by the assignments; that is, the force and effect to be given to the workmen's compulsory compensation act. The question presented and discussed is: When do the provisions of the act become bind-

ing upon the workman and the employer, so that any relief obtainable for injuries sustained by the workman through an accident must be recovered in accordance with the provisions of the act only?

The appellant argues that, after the workman has elected to be bound by the compensation act, by his failure to give the written notice before the happening of the accident, then the right of action given to him under the Constitution, common law, and other existing statutes is limited to one and only one condition of circumstances, namely: "The employer . . . shall refuse to make . . . compensation under this act." The appellant states its position as absolutely clear: "That in the absence of a written notice or written contract disaffirming the employment before the happening of the accident, that both the employer and workman are alike bound by the provisions of this act, and this act is the sole measure of their respective rights and liabilities. Any other construction would utterly destroy this act and render it ineffectual for any purpose whatsoever." The act was passed in compliance with the constitutional mandate found in section 8 of article 18 of the Constitution, reading as follows: "The legislature shall enact a workmen's compulsory compensation law applicable to workmen engaged in manual or mechanical labor in such employments as the legislature may determine to be especially dangerous, by which compulsory compensation shall be required to be paid to any such workman by his employer, if in the course of such employment personal injury to any such workman from any accident arising out of, and in the course of, such employment is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its officers, agents or employee, or employees, to exercise due care, or to comply with the law affecting such employment; provided, that it shall be optional with said employees to settle for such compensation, or retain the right to sue said employer as provided by this Constitution."

Section 6 of article 18 of the Constitution is as follows: "Sec. 6. The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

These limitations are binding upon the legislature, and the act passed in response to the command must not conflict therewith.

Section 2 of said chapter 14, the workman's compulsory compensation law, is as follows: "Compulsory compensation shall be paid by his employer to any workman engaged in any employment declared and determined as in section 3 of this act (as provided in section 8 of article 18 of the state Constitution) to be especially dangerous, whether said employer be a person, firm, association, company, or corporation, if in the course of the employment of said employee, personal injury thereto from any accident arising out of, and in the course of, such employment is caused, in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its officers, agents, or employee or employees, to exercise due care, or to comply with any law affecting such employment." Paragraph 3164, Ariz. Rev. Stats. 1913.

Section 3 declares and determines the employments that shall be considered especially dangerous within the meaning of section 2, *supra*. These employments are divided into ten classes. The first has reference to employees in transportation occupations; the second, to employees when engaged in making or using explosives, or necessarily employed in close proximity to explosives; the third, to employees working upon structures requiring iron or steel frames in the construction; the fourth, to operators of elevators, derricks, hoisting apparatus, and the like, while used in connection with the erection or demolition of bridges, buildings, or structures; the fifth, to all work on ladders or scaffolds of any kind elevated twenty feet or more above the ground or floor, used in the erection, construction, repair, painting, or alteration of any building, bridge, structure, or other work; the sixth, to all who work in the matter of construction, operation, alteration, or repair at places where electrical currents are in use; the seventh, to workers upon telephone and telegraph lines; the eighth, to all workers in mines and quarries; the ninth, to work in the construction and repair of tunnels, subways, and viaducts; the tenth, to "all work in mills, shops, works, yards, plants, and factories where steam, electricity, or any other

mechanical power, is used to operate machinery and appliances in and about such premises.   Paragraph 3165, Ariz. Rev. Stats. 1913.

Section 4 provides: "In case such employee . . . shall refuse to settle for such compensation . . . and chooses to retain the right to sue said employer . . . he may so refuse to settle and may retain such right."   Paragraph 3166, Ariz. Rev. Stats. 1913.

Section 7 provides: "When, in the course of work in any of the employments described in section 3 above, personal injury by accident arising out of and in the course of such labor, service, or employment, is caused to or suffered by any workman engaged therein, by any risk or failure specified in section 2 hereof [Paragraph 3164, *supra*], then such employer shall be liable to and must make and pay compensation to the workman injured . . . for such injury at the rates and in the manner hereinafter set out in this act: Provided, that the employer shall not be liable under this act in respect of any injury which does not disable the workman for a period of at least two weeks after the date of the accident from earning full wages at the work at which he was employed at the time of the injury, and provided, further, that the employer shall not be liable under this act in case the employee refuses to settle for such compensation and retains his right to sue as provided in section 4 [Paragraph 3166, *supra*] of this act." Paragraph 3169, *supra.*

These sections declare the terms and conditions that must be present in order to give the employee the right to claim the compensation prescribed by the act, if such employee elects to do so.

Section 6 prescribes the amount of compensation the injured workman is permitted to claim, and is not in question here. Paragraph 3168, *supra.*

Section 9 regulates the manner in which a workman who is injured and claims the compensation provided by the act may be subjected to a physical examination to ascertain and determine the nature, character, extent, and effect of the injury to such workman at the time of such examination, for the purpose of ascertaining the semi-monthly compensation installments then and thereafter to be made.   Paragraph 3171, *supra.*

Section 10 requires every workman seeking compensation under the act, who is not rendered thereby incompetent, to give notice in writing to the employer within two weeks after the date of the accident that compensation under the act is claimed by him.  This notice must be served in the manner specified in the section, and must state certain facts, but a failure to formally state the specified facts in the notice cannot be of advantage to the employer, unless the employer can establish he has been seriously prejudiced by such failure of such notice.  "No compensation shall be claimed or allowed so long as such notice is not given."  Paragraph 3172, *supra.*

Section 11 provides for the manner of adjusting any questions that may arise between the workman and the employer, and prescribes in what manner and by whom these questions may be settled.  In case of a refusal or failure of the employer and the workman to agree upon a settlement by either of the modes provided, then a civil action at law may be maintained by showing such refusal or failure as a reason for such suit.  If no questions arise, and any employer fails to make and pay compensation for a period of three months after the date of the accident, or for two months after payment of the last installment, then the injured workman may bring an action to recover and enforce the compensation provided by the act.  The action must be brought within a year after the accident, or after the nonpayment of any installment theretofore fixed by agreement or otherwise fixed.  The section specifies the judgment to be rendered in such case, and its effect and the amount and when satisfied.  Paragraph 3173, *supra.*

Sections 9, 10, and 11 deal with the procedure by which the injured workman must fix the liability of the employer, when such workman wishes to claim the compensation provided by preceding sections of the act, and the procedure by which he must enforce the payment of such compensation.  We must bear in mind that section 4 leaves the employee the right to refuse to settle for injuries he may have received, and retain his right to prosecute his action for damages, guaranteed to him by section 8 of article 18 of the Constitution, in which case, even if the employment and accident causing the injuries may come within the conditions covered by the preceding sections

of the statute. Section 7 relieves the employer from liability under the act, if the injury is such as not to disable the workman from earning full wages at the work in which he was engaged at the time of the accident, for the period of at least two weeks, and in case the workman refuses to settle for the prescribed compensation. Therefore, sections 9, 10, and 11, which prescribe the procedure by which the employer's liability shall be fixed, apply only to such cases where the injured workman seeks to claim the prescribed statutory compensation, and has not refused to accept the same so prescribed. The procedure prescribed in said sections of the act for fixing the liability, and enforcing its payment seems beyond doubt. And it is equally clear that such procedure can only apply to cases in which the injured workman is employed as such in any of the employments determined dangerous, and is injured, and he seeks to claim the statutory compensation. In which case, where he seeks to fix and enforce this compensation, he must bring himself within the terms and conditions of the act; otherwise he states no grounds for the relief provided by the act.

The plaintiff alleges that he was a machinist employed by defendant to perform certain work and services in and about the "works" of the defendant. That the defendant was "engaged in the smelting of ores, and in carrying on and operating a smelting plant. At the time plaintiff received the injuries, he was required to and was working upon a scaffold elevated twelve or fourteen feet above the ground or floor. He was occupied in placing in position a piece of channel iron." It is not alleged that steam, electricity or other mechanical power was used to operate machinery and appliances in and about the premises, nor whether his work was in connection with the erection, construction, repair or alteration of the building, or in other work about the plant. The plea in abatement alleges that it is made to appear from the complaint that the services which plaintiff had been performing, and was engaged in at the time of said injuries, were among those described in chapter 14 as especially dangerous and hazardous, and within the terms and conditions of the said act. Defendant does not point out in its plea in abatement, nor in its brief, within which of the ten classes of dangerous occupations it considers the complaint shows the plaintiff was

employed and occupied at the time of the accident, nor does it appear to us from the complaint within which or any class declared as dangerous the occupation falls. The plaintiff was employed about the "works" of defendant as a machinist. The defendant was engaged in smelting ores, and operating a smelting plant. At the time of the accident, the plaintiff was mounting a scaffold by means of a ladder, for the purpose of placing in position a piece of channel iron. The scaffold was twelve or fourteen feet in elevation above the floor. The fifth class of dangerous employments is declared to be when work is being performed upon ladders or scaffolds elevated twenty feet or more above the ground or floor beneath the erection, etc., of a building, etc., or other work. The facts stated in the complaint clearly do not bring the case within the fifth class of dangerous occupations; for the reason the scaffold upon which the plaintiff was standing while at his work was but twelve to fourteen feet above the floor. Work upon such scaffold not elevated twenty feet above the floor is not determined by section 3 of the act as especially dangerous employment.

The employment was in a smelting plant operated for smelting ores. The complaint is silent as to whether steam, electricity or other mechanical power was used in operating machinery and appliances in and about such smelting plant. The tenth class places "all work in mills, shops, works, yards, plants, and factories where steam, electricity, or any other mechanical power is used to operate machinery and appliances in and about such premises" as a dangerous employment. Unless steam, electricity or other mechanical power is used to operate machinery and appliances about the premises, about the smelting plant where plaintiff was working, then he was not engaged in a dangerous occupation as would bring him within the statute authorizing him to claim the compensation provided by the statute. The complaint does not show this fact to exist, and I do not feel justified in inferring that, in the operation of this particular smelting plant, the defendant employed steam, electricity or other mechanical power to operate machinery and appliances about the premises.

Does the complaint present such facts as make the plaintiff subject to the provisions of the act? No such express claim of such compensation appears in the complaint. Defendant

contends that, from the facts stated in the complaint, the plaintiff must be held to have elected to claim the statutory compensation. It relies upon section 14 to support this proposition. Section 14 is as follows: "This act shall take effect on the 1st day of September, 1912; and ten days from and thereafter, it shall be taken and held in law that all workmen then in the employ, and all workmen afterward employed by an employer at manual or mechanical labor of the kinds defined in section 3 of this act, are employed and working under this act, and the employer and workmen shall alike be bound by and shall have each and every benefit and right given in this act the same as if a mutual contract to that effect were entered into between the employer and the workman at any time before the happening of the accident. It shall be lawful, however, for the employer or workman to disaffirm an employment under the provisions of this act, by written contract between them, or by written notice by one to, and served upon the other to that effect before the day of the accident; provided, such written contract does not provide for less compensation than as provided in this act. And in the absence of such written contract or written notice, served as above provided, it shall be taken and held that the employment and service is under this act; and the same shall be the sole measure of their respective rights and liabilities when and as provided in this act; provided, if, after the accident, either the employer or the workman shall refuse to make or accept compensation under this act or to proceed under or rely upon the provisions hereof for relief, then the other may pursue his remedy or make his defense under other existing statutes, the state Constitution, or the common law, except as herein provided, as his rights may at the time exist. Any suit brought by the workman for a recovery shall be held as an election to pursue such remedy exclusively."

The appellant contends that, because the facts appear in the complaint that the plaintiff was employed more than ten days before the accident happened on October 6, 1912, and for more than thirty days subsequent to the date upon which the act became effective, and that the fact that plaintiff had not disaffirmed the employment under the terms of the act by written notice to that effect served upon the defendant before the accident, or by written contract between them,

does not appear in the complaint, and because it does appear in the complaint that the services which plaintiff was engaged to and was performing brought him directly under the provisions of this act, he is conclusively bound thereby.

In order to enforce the statutory remedy, the complaint must contain such statements of fact as reasonably may be inferred therefrom, not only that the plaintiff was employed by the defendant at the time the accident happened, but also that he was employed at an occupation declared and determined by the act as a dangerous occupation. The facts stated in the complaint must also reasonably make it appear that the plaintiff made due claim upon the defendant for the statutory compensation, and that all questions concerning the same have been settled, or that the defendant refused to settle such questions by one of the modes pointed out in the statute. If the facts stated do not reasonably show that the plaintiff was employed at the time of the accident at a dangerous occupation determined such by the statute, and if the facts stated do not show that the plaintiff has made due claim for the statutory compensation, after the accident, then he has failed to state such facts as entitle him to the relief afforded him by the statute, and the allegation of the plea in abatement to the effect that it appears from the complaint that the plaintiff was employed in such occupations as are declared and determined dangerous and hazardous is a conclusion of the pleader, and cures no defects of the complaint in that respect. The failure of the complaint to allege such facts as entitle the plaintiff to statutory relief as above indicated has no application to a complaint seeking relief by another remedy, as is the clear purpose of this action, and, for that reason, the assignments of error based upon the defendant's plea in abatement and its special demurrers are without merit.

The questions raised upon the overruling of the general demurrer and the plea in bar remain to be examined.

The plea in bar may be construed as supplying the defects in the complaint, and this plea, together with the complaint, shows such a state of facts as justify the inference that the plaintiff was, at the time the accident happened, engaged in one of the employments declared dangerous, and therefore entitled to claim the statutory compensation. Yet no fact is stated, either in the complaint or in the plea in bar, from

which the inference can be drawn that plaintiff duly claimed the compensation provided. But, conceding that such facts sufficiently appear as justify the inference that plaintiff was engaged in an employment declared dangerous, and that, after he sustained the injuries complained of, he duly claimed . the compensation provided, and met other necessary conditions entitling him to maintain an action to recover the statutory compensation, but, instead, he commenced this action for damages, then the question arises upon the plea in bar whether he can maintain this action, said facts existing, notwithstanding.

I hold, as above stated, that a claim to the statutory compensation, duly made, is the starting point from which the injured workman must begin in his race to overtake the fleeing trophy—his statutory compensation. In order to win the race, he must "toe the mark" by giving the employer a written notice to the effect that he claims the statutory compensation. This notice, except under certain circumstances, must be served within two weeks after the date of the accident; otherwise "no compensation shall be claimed, or allowed so long as such notice is not given." Section 10 of act. Section 14 in no manner conflicts with this positive requirement. This last-mentioned section defines the nature of the relation between the parties, employer and employee, created by the act, and the time when that relation arises and when it ceases, and the manner and the procedure by which such relation may be terminated by the voluntary act of the parties. The first proviso declares that, when no notice has been given disaffirming the employment under the act, nor any contract made varying its provisions, then the parties shall be considered as bound by the statutory contract, "and the same shall be the sole measure of their respective rights and liabilities, *when* and *as* provided in this act." A seeming conflict exists between this language and the right of the workman to pursue another remedy, but the statute must be liberally construed as a whole, with a view to effect its object and to promote justice. Laws 1907, sec. 4, c. 10.

The words "when and as provided in this act" must be given effect. "When" refers to the provisions of the act which require the workman, after the injuries are sustained,

to duly claim the statutory compensation; and the words "as provided in this act" have reference to the time and manner of asserting his claim. So considered, the clause amplified would read: "And the same shall be the sole measure of their respective rights and liabilities, if the injured workman, after the injury sustained, within two weeks, gives the employer due notice in writing that he claims the statutory compensation" as provided in the act.

At any time before the accident happens, both the employer and workman are given the option to disaffirm the statutory contractual relation, and by a written notice establish conclusively the general relation of employer and workman, and such relation is controlled by the laws applicable thereto; or, at their option, enter into a written contract defining the rights and liabilities the one to the other; or, at their option, permit the statutory contractual relation to remain, and, in which event, this act would define their respective contractual rights and liabilities, if they both elect to abide thereby.

After the injuries have been inflicted, the employer and the injured workman are each given the option to make or accept compensation under the act. The employer may refuse to pay the statutory compensation provided, when the injured workman makes claim thereto. In which event the workman must resort to some other remedy given him by the other existing laws, the state Constitution, or the common law, than given to him by the act. The injured workman may refuse to accept the statutory compensation, or refuse to proceed under the provisions of the act, in which case the employer is no longer bound by its provisions, but may defend without reference to the act, as his rights may at the time exist. The act measures the respective rights and liabilities of the employer and the employee solely, when they each so elect. That matter is left wholly to their free will, to be exercised after the date of the accident. If the workman is not incapacitated from giving the notice that he seeks compensation under the statute by the accident for the period of two weeks, and he fails to give such notice, then he loses his right to claim the statutory compensation, as the law makes the giving of the notice a condition precedent to his right to claim the same. Before the injured workman can maintain a civil action to recover and enforce the compensa-

tion provided by the act, he must claim such compensation by giving written notice of his claim, and have any questions which may arise between him and the employer determined either by written contract between them, or by arbitration, or by reference and submission to the attorney general of the state; or he must show that he and his employer failed or refused to agree upon a settlement by either of such modes; then he may commence and maintain his action, showing such refusal or failure as a reason for suit. The commencement of such action shall be held as an election to pursue his remedy for the recovery and enforcement of his statutory compensation. If, after the accident, he fails to claim the statutory compensation in the manner and within the time prescribed, and if he has claimed the compensation and fails to show that the employer and he have failed or refused to adjust all questions that have arisen between them in one of the modes prescribed, such failures to make due claim or to settle the questions clearly operate as defenses, but the commencement of such suit shall be held an election to pursue such remedy exclusively, and no other remedy is thereafter available to him. If, upon the other hand, he commences an action for the recovery of damages, without regard to the provisions of the act, then he is not permitted to abandon such suit and resort to his statutory remedy to enforce the compensation prescribed by the act. The injured workman is given his option to pursue his statutory remedy or his common-law or constitutional remedy for relief after his cause of action has arisen. If the employer refuses to pay the statutory compensation, the workman has no option to exercise. He is forced to pursue other existing remedies. If the workman refuses to accept the statutory compensation, the employer has no right to force him to accept the compensation. The employer and the workman are placed upon an equal footing in the matter. The workman may commence his common-law action and force the employer to defend the same, but the workman cannot force the employer to submit to the statutory action. The employer can force the workman to resort to his common-law action by refusing to pay the statutory compensation, but he cannot force the workman to accept the same nor to resort to the statutory remedy.

Whatever the relations between the employer and the workman may be, or be considered up to the date of the accident, until the accident, no occasion arises, when no written contract is made by the parties, nor written notice is served before the accident happens, by which the injured workman is called upon to make written demand for the statutory compensation, and until some. demand is made requiring the employer to refuse to pay the statutory compensation. This must be so, else the employer is not accorded equal protection under the law.

The plaintiff was wholly within his rights when he commenced this action in the nature of a common-law action to recover damages for his injuries. The commencement of this action must be deemed the exercise of his election of this remedy for relief for the first time made by him, and his action is not subject to abate, nor is the action barred because he had it in his power to proceed by another remedy for relief of a different nature, had he so elected. It is no defense to the action that the defendant was willing to pay the statutory compensation. The plaintiff retained the right to refuse to accept it when offered. By refusing to accept the offer, he lost no rights to proceed for damages, and the employer gained no rights thereby. The employer who offers to. pay the statutory compensation, and the offer is refused by the workman, is in no worse or other position thereby than he would be if he refused to make the payment. The statute was not intended to give to the employer the option to pay the compensation provided in cases when it was to his interest and advantage to pay, and refuse in cases where it was to his advantage to so refuse. Neither was the statute intended to empower the workman, when injured, to enforce the payment of the statutory compensation when it was to his advantage to receive such compensation, or to waive such compensation and resort to another remedy, when not to his advantage to accept such compensation. The workman, when he is satisfied to accept the statutory compensation, must signify his wishes by making the proper demand therefor. If his demand is refused, he can go no further. His election thus far was conditioned upon his employer complying with his demand. If the employer refuses compliance therewith,

the matter, so far as the statutory compensation to the workman is concerned, is at an end, and the workman must pursue another remedy for relief. If the employer offers to pay the statutory compensation, and the offer is refused by the workman, the employer is placed in no worse position than he would find himself if the statute had never existed. "The act is remedial in its purpose and shall be construed and applied so as to secure promptly and without burdensome expense to the workmen the compensation herein provided and apportioned so as to provide support during the periods named for the loss of ability to earn full wages" is the language of section 16 of the act. Clearly, it was not the purpose of the act to take away an existing remedy, but to give an additional remedy. The remedy given is cumulative, and may be pursued or rejected at the election of the workman, when his right thereto has matured, after the accident has happened, and his right to action has accrued. Any other construction of the law would be lacking both in justice and in common sense, as said by HISCOCK, J., in *Proctor* v. *Rockville Center M. & C. Co.,* 205 N. Y. 510, 99 N. E. 81, in passing upon a like question arising in that case involving the employers' liability act. In *Kleps* v. *Bristol Mfg. Co.,* 189 N. Y. 516, 12 L. R. A., N. S., 1038, 81 N. E. 765, the same court said: "The employers' liability act . . . .did not provide a remedy for an employee injured in the course of his employment which was exclusive or in abrogation of a right of action at common law. It gave him a right of action for such injury which was in addition to remedies theretofore existing."

The facts set forth in the complaint are sufficient *prima facie* to entitle the plaintiff to the relief demanded in the amount a preponderance of evidence should establish to the satisfaction of the jury. The action was not subject to the plea in abatement, for the reasons pleaded. Such reasons were inapplicable to the cause of action stated. Neither was the complaint subject to the demurrers interposed by the defendant, for the same reason. The plea in bar interposed no defense to the cause of action stated in the complaint, and that plea was subject to the general demurrer interposed by the plaintiff. The rulings of the lower court imply this con-

struction was placed upon the statute, and such rulings are without error.

I concur in affirming the judgment.

Application for rehearing denied.

---

NOTE.—On the question of the effect of employers' liability acts on common-law action, see note in 12 L. R. A., N. S., 1038.