[Civil No. 1942. Filed July 18, 1921.]

[199 Pac. 390.]

INDUSTRIAL COMMISSION OF ARIZONA, L. L. HENRY, JOSEPH LORD, HERBERT G. HODGSON, as Members of the Industrial Commission of Arizona, RAYMOND EARHART, Treasurer of the State of Arizona, and CHARLES W. FAIRFIELD, Auditor of the State of Arizona, Appellants, v. JAMES L. CRISMAN, Appellee.

MASTER AND SERVANT—COMPENSATION LAW HELD UNCONSTITUTIONAL IN REQUIRING ELECTION BEFORE INJURY.—Workmen's Compensation Law of 1921, section 60, requiring the employee to elect to accept compensation under the law before his injury, violates Constitution, article 18, section 8, making it optional with the employee to settle for such compensation or retain the right to sue, and, in view of section 90 of the act, section 60 being unconstitutional, the entire act is invalid.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. W. J. Galbraith, Attorney General, Mr. George R. Hill, Assistant Attorney General, and Messrs. Kibbey, Bennett, Gust & Smith, for Appellants.

Mr. F. C. Struckmeyer and Messrs. Baker & Whitney, for Appellee.

ROSS, C. J.—This action was brought by Crisman as a taxpayer to restrain the Industrial Commission,

Right to, and effect of, election with respect to acceptance of provisions of Workmen's Compensation Act, notes, Ann. Cas. 1915C, 308; Ann. Cas. 1918A, 700; Ann. Cas. 1918B, 715.

Constitutionality of Workmen's Compensation Act giving choice of remedies exclusively either to employer or employee, note, 6 A. L. R. 1562.

the State Auditor, and State Treasurer from putting into operation the Workmen's Compensation Law enacted by the fifth state legislature (chapter 103, Laws 1921), upon the claim or ground that it violates the state Constitution in requiring the employee to elect before he is injured whether he will accept compensation under said act or not. A temporary injunction was issued and, upon final hearing, the court permanently enjoined defendants from doing or taking any steps toward putting said act into operation. From this judgment the defendants have appealed.

We will confine ourselves to a disposition of the question submitted to the trial court and brought here for review. Section 60 of the act provides that employees in designated hazardous occupations shall have the option to accept the compensation as fixed in the act, or to reject its provisions and retain the right to sue. If the employee elects to reject the compensation, it is made his duty to serve a written notice in duplicate upon the employer to that effect, which notice must be filed with the employer prior to injuries sustained. An employee in such hazardous occupations failing to serve such notice prior to injury is conclusively presumed to have elected to take compensation. It is made the duty of an employer engaged in hazardous occupation designated to post and keep posted in a conspicuous place on his premises, in all languages spoken by his employees, and available for inspection by all workmen, a notice in substantially the following form:

"All employees are hereby notified that, in the event they do not specifically reject the provisions of the Arizona Industrial Commission Act, they are deemed by the laws of Arizona to have accepted the provisions of such act and to have elected to accept compensation under the terms of said act, and that, under the terms of said act, employees shall have the right to reject the same by written notice thereof

prior to any injury sustained, and that blanks and forms for such notice are available to all employees at the office of this company."

If an employee is injured while the above notice is not posted, or while the employer has not on hand blanks and forms of written notices of rejection of compensation, he may maintain other action against the employer under the laws of this state, or accept compensation, at his option.

The plaintiff claims that section 60 violates the Constitution in requiring the employee to elect to accept compensation under the compensation law before his injury, and insists that under the Constitution the employee may postpone his election of remedy until after his injury. Quoting from his brief, he says:

"The Constitution of the state inhibits the enactment of legislation requiring an employee to elect before injury the remedy he will pursue in the event of his injury in the course of his employment."

In support of this proposition, plaintiff cites section 8 of article 18 of the Constitution, and the decision of this court in the *Ujack Case,* 15 Ariz. 382, 139 Pac. 465. The provision of the Constitution referred to reads as follows:

"The legislature shall enact a Workmen's Compulsory Compensation Law applicable to workmen engaged in manual or mechanical labor in such employments as the legislature may determine to be especially dangerous, by which compulsory compensation shall be required to be paid to any such workman by his employer, if in the course of such employment personal injury to any such workman from any accident arising out of, and in the course of, such employment is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer,

or any of his or its officers, agents, or employee, or employees, to exercise due care, or to comply with any law affecting such employment: Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution.''

In the Ujack case we construed the above constitutional provision as permitting the employee to defer his election of remedies until after he was injured. The present law imposes the duty upon the employee of rejecting compensation before injury, and makes his failure to do so conclusive evidence of his acceptance thereof in lieu of all other remedies. If the view expressed in the Ujack case was correct and sound, the present Compensation Act cannot stand.

We realize that, if the employee may not be required to elect his remedy before injury, it is not possible for the legislature to pass a compensation law such as exists in nearly every state of the union. If he is permitted by the Constitution to postpone his election until after injury, and then elect to settle for compensation or retain his right to sue the employer for negligence, or under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162), it is not a substitutionary remedy, but an additional remedy.

Impressed as we have been with the desirability and necessity for a just and fair compensation law in this state to take the place of the burdensome, expensive, and litigious remedies for injuries and death in hazardous occupations, we have looked into the Ujack case with great care, thinking that we might possibly have taken a wrong view of the constitutional provision in that case, and that, upon a reconsideration, we would so conclude. We would have been gratified to overrule the Ujack decision and sustain the present legislation for two good and sufficient

reasons: First, it would have given to the industries of the state a compensation law, and, at the same time, second, allowed us to uphold the action of a co-ordinate branch of government.

We have, however, come to the conclusion that the decision in the Ujack case is sound; that, as therein stated, the employee may await his injury and then determine if he will accept compensation or retain the right to sue his employer, and that this right of choice is a constitutional right—one the legislature cannot take away from him by requiring that he elect his remedy before injury.

In addition to the reasons set out in the opinion in the Ujack case for such a holding, we have one other reason, which is as follows: We have before us the journal of the constitutional convention, and the discussion therein on section 8 of article 18 shows that the members of the convention had before them the New York Compensation Law of 1910 (Laws 1910, c. 674), and that the idea contained in the proviso to section 8 was borrowed therefrom. The New York act did not take the place of other remedies, but was in addition to them, the workman having his option after the accident either to accept compensation under the act or assert his rights under other laws; but if he, or his personal representatives, in case of death, availed themselves of the Compensation Act, "either by accepting any compensation hereunder in accordance with section 219–a hereof" (being the schedule section), it would constitute a bar to any other remedy. The scheme under the New York act was that the employee await his injury and then elect his remedy. "By accepting" statutory compensation he barred himself from recovering in other action. Under the scheme contemplated by our Constitution, he can bar himself from other remedies by settling for the statutory compensation, and until he settles

for such compensation he retains the right to sue. The discussion by the members of the convention on the proviso to section 8, although short, is very suggestive. It all shows that the effort was to have the Arizona Compensation Law permit the employee to postpone his election of remedies until after injury, following in that respect the New York act.

The language employed in the proviso to express that desire seems to be fairly well suited to the purpose. Independent of what the discussion in the constitutional convention disclosed, in the Ujack case we came to the conclusion that the proviso in section 8 permitted the employee to await his injury and settle for compensation, and in *Behringer* v. *Inspiration Cons. Copper Co.*, 17 Ariz. 232, 149 Pac. 1065, and in *Inspiration Cons. Copper Co.* v. *Conwell*, 21 Ariz. 480, 190 Pac. 88, this ruling was approved.

In section 90 of the present act it is provided that if section 60, requiring the employee to elect his remedy before injury, should be held invalid or unconstitutional, the entire act and every section thereof should be invalidated.

We have come to the conclusion that section 60, in requiring the employee to elect in advance of his injury his remedy, violates the Constitution, and it necessarily follows that the judgment of the lower court should be and is hereby affirmed.

BAKER, J. (Concurring.)—While I concur heartily in the opinion of Mr. Chief Justice ROSS, I cannot refrain from saying that it seems regrettable that, owing to its constitutional restrictions Arizona is barred from adopting a just and humane Compensation Law, such as exists in forty-three or forty-four states in the Union. My experience on the bench convinces me that the present Employers' Liability Law of this state, instead of lessening the evils which

an equitable and just Compensation Law is well calculated to cure, tends to increase these evils. The remarks of the Supreme Court of Montana in *Cunningham* v. *Northwestern Imp. Co.*, 44 Mont. 180, 205, 119 Pac. 554, 559, are peculiarly applicable to the present state of affairs in this jurisdiction.

"Whatever may be the reason therefor, actions for damages for personal injury and death have increased enormously in number in the past few years. It is notorious that but a small proportion of the moneys forced from the employer in these cases finds its way into the pockets of the plaintiff. The remainder is frittered away in payment of counsel fees, witness fees, court costs, and other necessary expenses of litigation. The records of this court disclose that our best and most highminded lawyers have, as was their duty, advocated the cause of the plaintiff in many of these cases; nevertheless, the fact remains that the solicitor of personal injury cases is a hateful reality, and much unnecessary and ill-advised litigation results from his activities. These cases are prolific of perjury and subornation of false swearing. They also add a great weight to the burden of the taxpayer. Some plaintiffs have lost meritorious causes, and many defendants, especially public service corporations, have been mulcted in heavy damages in actions where the great preponderance of the evidence was in their favor. Jurors in some communities are, unconsciously, perhaps, prejudiced against corporations, as such. In practical application, our present system does not afford the equal protection of the laws to certain defendants. It is impossible not to recognize the fact that the defendant's ability to pay is often used as a basis for calculating the compensation due the plaintiff. Personal injury cases breed class hatred, as between capital and labor, in its most virulent form."

While it is unfortunate that the evils referred to must continue to exist and flourish, it is not our function to provide a remedy by judicial legislation. The remedy lies with the people. Both California

and New York were compelled to amend their Constitutions before they were able to adopt beneficial Compensation Laws.

McALISTER, J. (Concurring.)—I concur in the opinion of the Chief Justice. The importance of the question presented is such that I shall give briefly some additional reasons for so doing.

This action is here for the sole purpose of testing the constitutionality of the Workmen's Compulsory Compensation Law enacted by the last legislature. The only question presented is whether the act comes within the terms of the constitutional mandate contained in section 8, article 18, of our fundamental law. Plaintiff's grievance is that section 60 thereof compels an employee to exercise before injury the option guaranteed him by the Constitution; that is, requires him to decide in advance of injury whether he will accept the compensation provided in the law in the event of injury or retain his right to sue under other provisions of the Constitution. He contends that the Constitution limits the legislature to the enactment of a law reserving to the employee the right to elect after injury whether he will accept compensation or pursue another remedy. Defendant admits this to be true under the decisions of this court, but contends that the Compensation Act, instead of requiring a final election before injury, merely permits it, and is therefore not violative of the constitutional provision. In view of this admission, the only question to be determined is whether the act permits election after injury.

Section 8, article 18, Constitution of Arizona, reads as follows:

"The legislature shall enact a Workmen's Compulsory Compensation Law applicable to workmen engaged in manual or mechanical labor in such em-

ployments as the legislature may determine to be especially dangerous, by which compulsory compensation shall be required to be paid to any such workman by his employer, if in the course of such employment personal injury to any such workman from any accident arising out of, and in the course of, such employment is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its officers, agents, or employee, or employees, to exercise due care, or to comply with any affecting such employment: Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution."

Section 60 of the act provides that it shall be optional with employees in certain designated occupations to accept compensation as fixed by the act or reject it and retain the right to sue. Rejection of compensation is accomplished by the employee's notifying the employer in writing before injury to that effect, while acceptance is brought about by his taking no action at all; his failure to notify the employer of rejection itself constitutes, under the act, an election to take compensation.

It is obvious that at the very threshold of his employment the employee is met with the necessity of making a choice as to his remedy in case of injury. He cannot avoid it, for if he does not by affirmative action reject compensation the law accepts it for him. He may reject it any time before injury, but until he does the law has chosen it for him. Appellant contends that in rejection before injury the choice is not final, but there still remains the right to make another choice after injury between compensation and other remedies. In other words, rejection before injury is necessary, but only for the purpose of preserving the right to make a final election after injury. It

is conceded that the right of election is personal.
Who, then, is to elect finally in case of sudden death
after rejection before injury? How is one who is
suddenly killed, after having preserved by rejection
before injury his right to make a final choice, to en-
force the right he has preserved? Yet it is claimed
that one of the main purposes of the act is to provide
for dependents in death cases. This suggestion alone
discloses the fallacy of such a contention, for, if an
election to reject before injury does not preserve the
right in all cases, death as well as injuries only, it
cannot be said that election after injury is preserved,
for only a part of those who reject merely to keep
alive their right to a final choice will be able "to
reap the harvest they have sown." As I see it, only
one election is provided for and that before injury.
The general provisions relied on to confer this right
cannot avail in the face of this definite requirement
in section 60 of the act. The enforcement of a claim
for compensation after the employee has elected to
reject it could undoubtedly be defeated by proof of
his rejection.

If it be, then, that appellant's main contention—
that an election of remedy after injury is preserved—
is not well founded, the invalidity of the Compensation
Act is apparent, unless the construction heretofore
placed on section 8, article 18, of the Constitution, by
this court is discarded. It is upon the Constitution
itself, and this court's construction of it in the case
of *Consolidated Arizona Smelting Co.* v. *Ujack,* 15
Ariz. 382, 139 Pac. 465, decided in March, 1914, that
appellee relies. The provisions of the Compensation
Act passed in 1912 (Laws 1912 [Sp. Sess.], c. 14)
and that part of the act of 1921 which we are now
considering are very similar; in fact, the same in
effect and purport. Ujack was injured while engaged
in a hazardous employment, and filed suit for dam-

ages based on the negligence of his employer, the
company, which defended upon the theory that Ujack,
not having disaffirmed his employment under the pro-
visions of the Compensation Act by serving written
notice thereof on his employer, came within the terms
of the act because of the further provisions therein
that—

"In the absence of such written contract and writ-
ten notice served as above provided it shall be taken
and held that the employment and service is under
this act; and the same shall be the sole measure of
their respective rights and liabilities."

It will be observed that there it was necessary for
the employee to serve notice that he would not ac-
cept compensation in case of injury or it would be
held as a matter of law that his service was under
that act, which would be his sole measure of damages,
while here he must reject by written notice served
on the employer, or he will be conclusively presumed
to have elected to take compensation under the act,
which is his exclusive remedy thereunder. That act
also contains in the language of the Constitution two
provisions as to the election of remedies, sections 4
and 7, and another stating that—

"If, after the accident, either the employer or the
workman shall refuse to make or accept compensation
under this act, or to proceed under or rely upon the
provisions thereof for relief, then the other may pur-
sue his remedy or make his defense under other ex-
isting statutes, the state Constitution, or the common
law."

Which of these conflicting provisions shall control
—the disaffirmance clause relied on by appellant as
requiring an election before injury, or those claimed
by appellee as permitting it after injury; two in
the language of the Constitution, and the other in
effect construing it in accordance with appellee's

contention? In solving this question, the court naturally turned to the Constitution itself, and in giving its reasons for holding that the disaffirmance clause compelling an election of remedy before injury was not in harmony with the constitutional mandate, used this language:

"It will be granted, of course, that, when conflicts occur in the above quotations from the Constitution and the statutes, the latter must give way. If the Constitution makes the compensation obligatory on the employer and optional as to the employee, to be exercised after the injury, that is the end of it. The Constitution says: 'The legislature shall enact a Workmen's Compulsory Compensation Law . . . by which compulsory compensation shall be required to be paid to any such workman by his employer. . . . Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution.' This mandate to the legislature was carried out in the enacting of the Workmen's Compulsory Compensation Law, and, in doing so, there was created a new civil action heretofore unknown to our laws, available to the employee injured in the circumstances provided by law. It is optional with the injured employee as to whether he will accept the compensation. The employee's right to exercise this option being a constitutional right, legislation is impotent to deprive him of it. If the employee is never injured, he can make no claim for 'such compensation,' nor exercise his option. After a cause of action has accrued to the employee, he may choose to accept the compensation allowed under this act, and the legislature is competent to prescribe the steps he shall take in its enforcement, but it cannot require him to elect, in advance of any injury, or the accrual of any right, which remedy he will pursue for redress.

"Therefore, any expressions in the Workmen's Compulsory Compensation Act that seemingly require that the employee shall elect, in advance of injury, his remedy for redress should be read and construed in view of the constitutional provision permitting him

to exercise his option, after the injury, either to claim compensaton or sue for damages.''

The court was undoubtedly right in its construction of the constitutional mandate as permitting an election of remedy only after injury. While it does not say in *haec verba* that the option can be exercised only after injury, yet that such is its undoubted import seems clear. How can an employee ''settle'' for ''such compensation'' until compensation is due? When he knows the extent of his injury, and what the law provides as compensation for it, he will be in a position to decide whether he will accept it or sue under other provisions of the law. Many injuries can be and are provided for, but in the very nature of things all of them cannot be foreseen; neither do the same injuries affect all persons alike. It is clear to my mind that it is not the intent of the Constitution to permit an employee to be deprived of his right of election before he has sufficient knowledge to enable him to choose his remedy in accordance with the dictates of his best interests. The idea of choice based upon full knowledge of the extent of the injury and the cause of it is contained in the constitutional mandate.

The correctness of this view is strengthened by a further consideration of section 5, article 18, of the Constitution, which says in effect to the legislature: Enact a Workmen's Compulsory Compensation law requiring the payment of compensation to any workman who receives in his employment under certain conditions a personal injury, but provide in that law that it shall be optional with the employee to settle for such compensation or retain the right to sue; do not provide for compensation in case of death, because no one then can exercise the option. Since, then, the command is to provide for compensation in case of injury, and by implication not to do so in cases of

death, where the right to elect, being personal, dies with the employee, is not the conclusion inevitable that only the employee who is injured can exercise the option? Otherwise, the command would have been to provide for compensation in all cases, and for an election between it and other remedies at a time when all employees, including those who may be merely injured as well as those who may lose their lives, can exercise the option, which necessarily would be before injury. To whom do the words "said employee" in the optional clause refer? Is it not the workman (employee) previously mentioned in the same section as the one to whom "personal injury is caused"? It seems clear that the entire proviso was inserted wholly for his benefit.

It is further claimed that unless the option can be exercised before injury compensation cannot become a substitute for other remedies, which is one of the characteristics of all compensation laws. The legislature is directed to provide for compensation to be paid the workman himself, for injuries only, nothing being said in reference to making provision for paying compensation to his heirs or dependents in case of death. This court, in the case of *Behringer* v. *Inspiration Cons. Copper Co.*, 17 Ariz. 232, 149 Pac. 1065, held that compensation in death cases was not included in the mandate, unless it be where the injured employee elects compensation after injury and dies pending settlement, in which case—

"The personal representative doubtless could enforce the contract, as he could any other contract of his intestate."

If this be true, dependents in such event would be deprived of the compensation the death schedule carries, and also defeated in an action under other provisions of the Constitution based upon wrongful death. Such was not the intention of the Constitu-

tion. It is a very serious question, then, whether the legislature is not powerless to permit the substitution of compensation in death cases for the remedies given under other provisions of the Constitution. Can constitutional language specially limiting compensation to employees be so enlarged in meaning as to include compensation to heirs and dependents? A constitutional amendment in California granted the legislature the right to—

"Create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment, irrespective of the fault of either party."

The Supreme Court of that state, in an opinion in which the judges were divided in the proportion of four to three, held that the power was thereby conferred on the legislature to provide for compensation to dependents and heirs. *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, Ann. Cas. 1917E, 390, 156 Pac. 491. But the constitutional provision there does not direct the legislature to provide also that it shall be optional with the employee to settle for such compensation or retain his right to sue. If there had been a provision requiring the preservation of the right of the employee to elect between compensation and other remedies, the conclusion reached would doubtless have been as the three dissenting judges held, even without the optional provision. The fact that section 7, article 18, of the Constitution, just preceding the section under consideration providing for compensation to employees, directs the legislature to enact an Employers' Liability Law applicable to all cases of death and injury still further strengthens this view. Both sections appear in article 18, entitled "Labor," and have in view different phases of the same thing, the manner of enforcing claims for

injuries in hazardous occupations. Why should one contain a mandate relative to cases of both death and injury, and the other only to the latter, unless it be that both mean what they say and no more?

It is again urged that to permit an election of remedy after injury gives only an additional method of redress, which would result in defeating the purpose of the constitutional mandate to enact a workmen's compulsory compensation law, since it cannot then become substitutionary. Inasmuch as compensation is compulsory as to the employer and optional as to the employee, an additional remedy so far as the latter is concerned is all that is intended. It becomes both a substitutionary and compulsory remedy as to him from the time he decides to make it such by electing to settle for compensation, but not until then. The only purpose of the proviso is to preserve, not until employment is secured, but until injured in the employment, the employee's right to say whether he wants to substitute compensation for other remedies or not. There is no question but that the optional clause was inserted for his benefit, but, unless he knows when his remedy is chosen the seriousness and extent of his injury and the manner of its occurrence, he will be unable then to determine whether compensation will be better for him than other remedies, and the option which has been vouchsafed unto him will, practically speaking, have been denied him, and the purpose of the one who introduced it and of those who sponsored it in the constitutional convention frustrated. To give the employee the right, up to the time of the injury, to sue for negligence, or seek redress under the Employers' Liability Law, or claim compensation, whatever choice made to be binding from then hence, to my mind effectuates the very purpose of the mandate, rather than defeats it, and in no other way could this be accomplished.

Up to the end of territorial government in Arizona, a recovery for personal injury resulting in death was limited to $5,000, and the cause of action therefor was subject to all the defenses of the fellow-servant rule, assumed risk and contributory negligence, but with the adoption of the Constitution, which removed the limitation to recovery, abrogated forever the fellow-servant doctrine, made assumed risk and contributory negligence questions of fact for the jury to decide, and provided for the enactment of an Employers' Liability Law, as well as one for Workmen's Compulsory Compensation, "a different and more advanced, as well as humane public policy" was inaugurated, one which made it possible to enforce in court a claim for personal injury or death without the necessity of overcoming practically insurmountable defenses. When, therefore, there was proposed in the constitutional convention a Workmen's Compulsory Compensation Law which would provide a definite amount for all foreseen injuries, the changed status of the employee under the new remedies of the Constitution led to the introduction and adoption, as a part of the mandate to enact a Workmen's Compulsory Compensation Law, of the proviso therein which reserves to the employee the right to proceed at his option under one of these new remedies when the nature and extent of his injury, together with the manner of its occurrence, suggest that his best interest will be thereby subserved; otherwise to settle for the compensation which the act should provide for such injury.

To see that the employee lost none of the rights just conferred by the Constitution, by compelling him to accept, in their stead, a definite amount for an injury, the seriousness of which could not in all instances be foreseen prior to the injury, seems to have prompted the passage of this provision, and

besides, the practical working of Compensation Laws was then virtually unknown in this country, as there had been only two or three enacted and they were very recent. By giving the mandate its natural construction, as meaning an election after injury, its double purpose is effectuated; that is, compulsory compensation as a substitute remedy is provided for where the employee wants to make it such, and the option of the latter to accept it or not is preserved.

To my mind it is clear that the optional provision in section 8, article 18, was placed there entirely for the benefit of the injured employee. It was intended to preserve his right to elect his remedy at a time when he could do it to his best advantage. If such construction renders it impossible to enact in this state a Compensation Law in the true sense of that term, my answer is that the fundamental law is our guide, and where it leads it is the duty of the court to follow. Whatever the consequences may be, the court has no alternative other than to give effect to its plain mandates, and, if this stands in the way of the enactment of a Compensation Law in harmony with those in other states, and it is thought best to have one of that kind, the appeal to remove the barrier should be to the people who made the Constitution, and can remake it, and not to the courts, which possess only the power to construe it. I am convinced, therefore that the act is invalid because it deprives employees of their constitutional right to choose after injury between compensation and other remedies; and, since it is provided in the act itself that in case the election before injury provision cannot stand the whole shall fail, I concur in the opinion of the Chief Justice that the judgment of the trial court nullifying the law should be affirmed.