[Civil No. 4438. Filed November 10, 1941.]

[118 Pac. (2d) 1102.]

RED ROVER COPPER COMPANY, a Corporation, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, and L. L. MOODY, Respondents.

Messrs. Perry, Silverthorne & Johnson, for Petitioner.

Mr. Wm. H. Chester, Mr. Rouland W. Hill, and Mr. Howard A. Twitty, for Respondents.

LOCKWOOD, C J.—This matter is before us on *certiorari* from an award of the Industrial Commission, in favor of L. L. Moody, petitioner, and against Red Rover Copper Company, a corporation, called the company.

The record before us shows the following facts: In early November, 1940, petitioner applied to the company for employment at its mine. On November 13 he was told by the foreman that if he would sign a rejection of benefits under the Workmen's Compensation Act he would be employed, but not otherwise. He was also told that he would be insured by Lloyd's of London, and that such insurance was better than state compensation, as it insured him twenty-four hours a day, off and on the job. He signed the rejection and went to work on the following morning, continuing in his employment until November 25, when he was injured by an accident which admittedly arose out of and in the course of the employment. He was given medical attention and was paid compensation, on the basis of the Lloyd's policy, from the date of his injury, until March 28, 1941. On March 20, 1941, he filed a claim for compensation under the Act with the commission, setting forth his injuries and an affidavit to the effect that he had rejected the Compensation Act because he was told that he could not go to work unless he did so, and that the industrial insurance carried by Lloyd's was better than the state industrial insurance. Due notice of the hearing was given to the company and it was represented thereat. A copy of the Lloyd's policy covering the petitioner was introduced and it clearly appeared therefrom that the benefits thereunder were much less than that provided by the Act for injuries such as the evidence shows petitioner received. The evidence also shows that at the time of the hearing petitioner was still suffering from temporary total disability and his condition had not reached a stationary stage.

The matter was submitted to the commission for decision, and thereafter, and on June 18, 1941, petitioner executed a release, which reads as follows:

"*For and in Consideration Of* the sum of Two Hundred Fifty and no/100 dollars ($250.00) to me in hand paid and the further sum of Five Hundred Sixteen and 12/100 dollars ($516.12) heretofore paid to me, I hereby release and forever discharge Red Rover Copper Company at Cave Creek, Arizona and/or Underwriters at Lloyd's, London, of and from any and all claims which I might have or may hereafter have against either the Red Rover Copper Company or *Underwriters at Lloyd's, London,* on account of loss or damage sustained by me on account of accident which occurred on or about November 21, 1940 while in the employ of the Red Rover Copper Company.

"It is the intent and purpose of this release to fully discharge from any liability or further responsibility on account of said accident not only the Red Rover Copper Company on account of any obligations which they might have on account of occurrence of said accident but also to fully release *Underwriters at Lloyd's, London* from any further liability under the terms of its contract of insurance #18135–6 as issued to the Red Rover Copper Company and providing for the payment of said benefits to the undersigned in the event of injury.

"Dated at Medford, Ore., this 18 day of June, 1941."

This release was never approved by the commission nor did it know that it had been executed until July 21, when the company filed a petition for rehearing.

On July 12 the commission made an award, which contained, among other things, the following findings:

"4. At the time applicant was employed by defendant, to-wit, November 13, 1940, defendant required applicant, as a condition of said employment, to sign an instrument purporting to reject the terms of the Workmen's Compensation Law of the State of Arizona.

"5. Defendant represented to applicant at the said time it employed applicant that it carried insurance on all its employees with Lloyd's of London, and that employees injured by accidents arising out of and in the course of their employment had received benefits

paid under such insurance coverage which were more and larger than the benefits provided by the Workmen's Compensation Law of Arizona for employees injured by accident arising out of and in the course of their employment.

"6. Said representation made by defendant to applicant was made for the purpose of inducing the applicant to reject the terms and benefits of the Workmen's Compensation Law of Arizona.

"7. Said applicant relied on the truth of said representation and did on November 13, 1940, sign an instrument purporting to reject the benefits and terms of the Workmen's Compensation Law of Arizona which said instrument was in words and figures as follows, to-wit:

*"Employee's Notice to Reject Terms of Workmen's Compensation Law.*
"Date November 13, 1940
*"To Red Rover Copper Company,*
(full name of employer)
*Cave Creek, Arizona*
(address of employer in full)
*"You are hereby notified that the undersigned elects to reject the terms conditions and provisions of an act for the payment of compensation as provided by the Industrial Commission Act of the State of Arizona, and Acts amendatory thereto.*
(Signed)   *Les L. Moody*
*Les L. Moody*
"Date Nov. 13, 1940.   address Cave Creek, Ariz.
".   .   .   .   .   .   .   .   .   .

"8. Said representation made by defendant to applicant aforesaid was false in that the benefits paid to injured employees under said Lloyd's insurance coverage to employees injured by accident arising out of and in the course of their employment were not at said time more or greater than the benefits provided by the Workmen's Compensation Law of Arizona for employees injured by accident arising out of and in the course of their employment, and were in fact less than the said benefits provided by said Workmen's Compensation Law.

"9. At said time applicant was ignorant of the falsity of said representation and had a right to rely upon the truth therof.

"10. At said time defendant either knew that said representation was false or was ignorant of the truth of said representation, but should have known said representation was false.

". . . . . . . . . .

"17. It is therefore the conclusion of this Commission that the said instrument signed by applicant purporting to reject the terms and conditions of the Workmen's Compensation Law of Arizona was null and void and of no force and effect whatsoever and that both said applicant and said defendant were at said time subject to the terms and conditions of the Workmen's Compensation Law of Arizona."

and the usual other findings in regard to injury, wages, etc., which would support the following award in favor of petitioner and against the company:

"1. The sum of $720.75 payable forthwith for compensation from November 22, 1940 to date hereof.

"*It Is Further Ordered* that the said defendant pay all medical, surgical and hospital expenses necessary to cure and relieve the said applicant from the effects of the said injury.

"*It Is Further Ordered* that liability on the part of the defendant for temporary total disability compensation and permanent partial disability compensation, and additional medical, surgical and hospital services does not cease at this time and that said liability for the said compensation and medical benefits shall run concurrent with the disability of applicant and final liability of the said employer shall be determined by this Commission at such time as the condition of the said applicant has become stationary by reason of his recovery from the effects of the said injury.

"*It Is Further Ordered* that this award be paid within ten days from the date of service hereof.

"*It Is Further Ordered* that all payments heretofore made by the defendant or which defendant has caused to be made shall be allowed as a credit upon this award upon satisfactory proof of the payment thereof."

The petition for rehearing having been denied, the matter is before us. There are three questions arising for our consideration. The first, and most important, is whether the commission acted in excess of its jurisdiction in finding that the rejection of the Compensation Act above referred to was void and not binding upon petitioner. It is urged that such finding and the award necessarily involved the cancellation of a written instrument executed by petitioner, and that the commission, not being a court of equity, had no jurisdiction to take such action. This involves a somewhat extended consideration of our constitutional and statutory provisions covering the Compensation Act. Code 1939, § 56–901 et seq.

Before Arizona became a state the common law rule governed almost entirely the relation between employer and employee, so far as accidents arising out of and in the course of the employment were concerned. Any liability of the employer for such an accident was based on his proven negligence, and he might raise the common law defenses of fellow servant, assumption of risk, and contributory negligence as matters of law for the consideration of the court. Our Constitution, following the modern rule which is now in effect in practically every part of the United States, adopted the policy of placing the burden of injuries of this nature upon the industry, and took away the fellow servant defense, and left those of contributory negligence and assumption of risk at all times to the trier of fact, and not to the court as a matter of law. It further directed the legislature to enact an employer's liability law covering most of the hazardous occupations, which left the negligence of the injured employee as the only defense of the employer. Const. Arizona, art. XVIII, sections 4, 5 and 7. This afforded a degree of protection to employees far greater than they had previously enjoyed. It still,

however, in cases where the employer did not settle the matter voluntarily, left the determination of liability and the amount of compensation to the ordinary judicial proceedings with their well known formality, delay and costs. By 1925 public opinion was dissatisfied with the protection thus afforded, and the seventh legislature adopted chapter 83 of the session laws of 1925, known as the Workmen's Compensation Act. Its terms, however, were such that it was felt necessary that the Constitution itself should be amended before it could become effective, and this was done by a vote of the people at a special election in September, 1925. Const. Arizona, art. XVIII, § 8. While the amendment was prospective in form as requiring the enactment of a compensation law, it shows on its face that it was an approval of chapter 83, *supra,* and we, therefore, construe the two together.

An examination of the amendment and the chapter, viewed in the light of their history and background, shows clearly that one at least of the purposes of both the legislature and the people of the state was to provide a right of compensation for industrial injuries, specific as to circumstances and amount, and a method of securing to the injured workman such compensation, which was different from that provided by the usual judicial hearing in a court.

The commission established by the terms of the Act is not a court in the strict sense of the term. *Alabam's Freight Co.* v. *Hunt,* 29 Ariz. 419, 242 Pac. 658. But it is a tribunal having bestowed upon it by the legislature the right to determine questions of fact and to apply the existing law thereto in the cases in which it may make awards. *Federal Mut. L. Ins. Co.* v. *Industrial Comm.,* 31 Ariz. 224, 252 Pac. 512; *Maryland Cas. Co.* v. *Industrial Comm.,* 33 Ariz. 490, 266 Pac. 11. Its decisions, so far as awards are concerned, are not subject to review by the superior courts of the

state, but may be taken directly before this court for that purpose. Section 56–972, Arizona Code 1939. And we have always reviewed such awards upon the same basis as judgments of the superior courts, subject to the special rules as to procedure set forth in the Act. *Di Paolo* v. *Calumet & Arizona M. Co.*, 36 Ariz. 347, 285 Pac. 680. The commission is the only body authorized by law to make an award of compensation under the Act. No superior court has any power whatever concerning such award. Sections 56–914, 56–916, Arizona Code 1939; *Murphy* v. *Industrial Comm.*, 52 Ariz. 343, 80 Pac. (2d) 960. And even this court, in its revisory power, may only affirm or set aside the award, having no power to modify it. *King* v. *Alabam's Freight Co.*, 40 Ariz. 363, 12 Pac. (2d) 294; *Paramount Pictures* v. *Industrial Comm.*, 56 Ariz. 217, 352, 106 Pac. (2d) 1024.

In determining whether a petitioner is entitled to an award under the Act, the commission must necessarily consider and determine two questions, (a) what are the facts affecting the case, and (b) what is the law upon that state of facts. It is impossible for any award whatever to be made without exercising both functions, nor do we understand that the company contends the commission may not make decisions as to what the law is. Its position is that law is so different and distinct from equity that, while the commission may consider and apply the rule of one, it may not determine the effect of the other on the factual situation.

When equity jurisprudence first arose, it was considered as a matter entirely distinct and apart from law, strictly so-called. It was administered by different courts and under different principles and the two classes of tribunals frequently reached conflicting and even contradictory results. As time went on, however, the difference between the two systems has be-

come less and less, both through legislation and the action of the courts, until in most states, so far as procedure is concerned, there is no longer any distinction. Arizona never had separate courts of equity. In territorial days, the federal courts did administer, side by side in the same court, two separate and distinct systems of legal and equitable procedure, but even they, when acting as territorial courts, for many years have administered but the one system, the distinction between actions at law and suits in equity having been abolished by legislative act. This rule was carried over into statehood and our new rules do away with any jurisdictional difference between the enforcement of common law and equitable principles. We still call these principles by the different names but they are all one system of jurisprudence and are administered indiscriminately as such.

A question similar to the one under consideration has arisen in a number of other states. Utah, Wisconsin, Oklahoma and Texas seem to support the view of the company. *Continental Cas. Co.* v. *Industrial Comm.*, 61 Utah 16, 210 Pac. 127; *Farmers Gin Co.* v. *Jones*, 146 Okl. 79, 293 Pac. 527; *Lumbermen's Reciprocal Ass'n* v. *Henderson*, (Tex. Com. App.) 15 S. W. (2d) 565; *Kelley* v. *Minneapolis, St. P., etc., Ry. Co.*, 206 Wis. 568, 240 N. W. 141.

On the other hand, New York, California and Kansas reach the opposite conclusion. *Bankers' Indemnity Ins. Co.* v. *Industrial Acc. Comm.*, 4 Cal. (2d) 89, 47 Pac. (2d) 719; *Employers' Liability Assur. Corp.* v. *Matlock*, 151 Kan. 293, 98 Pac. (2d) 456, 127 A. L. R. 461; *Royal Indemnity Co.* v. *Heller*, 256 N. Y. 322, 176 N. E. 410, 411. We think the case last cited well states the correct rule in the following language:

"Where and how has the jurisdiction to consider equitable defenses been withheld from the board? It is difficult to put one's finger on any constitutional or

statutory provision or judicial decisions which thus limits its jurisdiction. The difference, once regarded as basic, between the method of trying legal defenses and equitable defenses, no longer exists. Independent suits are no longer necessary to establish equitable rights. The question was elaborately discussed by Cardozo, J., in *Susquehanna S. S. Co.* v. *A. O. Andersen & Co.*, 239 N. Y. 285, 146 N. E. 381, and the conclusion was reached that equitable defenses are triable in the same way as defenses that are legal. The jurisdiction to hear and determine equitable defenses is incidental to the general jurisdiction of the Board to enforce policies under the Workmen's Compensation Law. Without such jurisdiction the old rule is revived without reason."

■■ We hold, therefore, that the commission in making an award necessarily has the right to consider and make the proper application of the rules of equity, as well as those of the common law, to the facts as found by it. If it errs in its application of these rules its action is subject to review by this court, and while we give great weight to the determination of the commission as to the facts, we have never hesitated to consider the question of whether the law was properly applied to those facts independently, and uninfluenced by the conclusions of the commission.

■ The next question, therefore, is whether upon the facts as found by the commission, the rejection of the Act by petitioner, when he was first employed, is valid. The constitutional amendment and the legislation enacted thereunder declare the public policy of the state of Arizona. No contractual consent, no statute of limitations, no laches nor estoppel can prevail against public policy, and any agreements made and any acts done in violation of it are necessarily void. In view of the terms of the constitutional amendment and the Act, interpreted in the light of our history, we are convinced that the election given to an employee to exercise his option must be a free and

voluntary one, uninfluenced by intimidation, fraud or coercion of any nature whatsoever; that to make a rejection of the Act a condition precedent to employment is coercion, and no rejection thus obtained is, or can be made, valid. Such being the case, when petitioner was injured he had failed to make a valid rejection of the Compensation Act, and, therefore, under the provisions of the constitutional amendment, he is conclusively presumed to have elected to take his compensation under the terms of the Act. Art. XVIII, § 8, *supra*. Our conclusion upon this point makes it unnecessary for us to consider the question of fraudulent representations as to the benefits under the Lloyd's policy. Nor could the release above set forth have any effect on petitioner's rights under the Act, since it was not approved by the commission. *Doby* v. *Miami Trust Co.,* 39 Ariz. 228, 5 Pac. (2d) 187.

The findings and award very properly credited thereon any amount paid by the company through the Lloyd's policy.

The award is affirmed.

McALISTER and ROSS, JJ., concur.