758 P.2d 662

**McArthur HACKER (Deceased); Rosemary Hacker (Widow); and Danece Lynn Hacker (Minor on Date of Death), Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**M & R Trailer Services, Inc., Respondent Employer,**

**Orion Group, Respondent Carrier.**

**No. 1 CA–IC 3850.**

Court of Appeals of Arizona,
Division 1, Department B.

July 26, 1988.

Law Offices, Harlan J. Crossman, P.C. by Harlan J. Crossman, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent, The Industrial Com'n of Arizona.

Wisniewski, Surrano & Fendon by Don A. Fendon, Phoenix, for respondent employer and respondent carrier.

OPINION

HAIRE, Judge.

In this review of an Industrial Commission award denying a surviving spouse's claim for death benefits, we must determine whether her deceased husband

effectively rejected workers' compensation coverage before the occurrence of his industrial injury and subsequent death. Specifically, we must decide whether the deceased corporate employee, who was also the owner and president of the corporate employer, was required to give a notice in writing in compliance with A.R.S. § 23–906 (Supp.1987), in order to effectively reject coverage under the workers' compensation act. We conclude that compliance with the statute is mandatory, and, accordingly, set aside the award denying the surviving spouse's claim.

In January 1987, the petitioner (surviving spouse) filed a surviving spouse's workers' compensation claim for the work-related death of her husband. The respondent carrier (carrier) denied this claim on the basis that the husband, as president of the insured employer, had elected to reject coverage of corporate officers when the corporation purchased its workers' compensation insurance policy. The surviving spouse protested the denial of this claim and, thereafter, a hearing was conducted before an administrative law judge to determine the correctness of the carrier's denial.

There was sharply conflicting testimony concerning the transaction between the corporation and the insurance carrier. The administrative law judge rejected the surviving spouse's version of these transactions, and accepted the carrier's version, which we summarize as follows.

For several years, the husband operated a sole proprietorship repairing trailers. During that time, he did not have workers' compensation coverage for himself.[1] In July 1985, the business was incorporated as M & R Trailer Services, Inc., (the corporation). The husband and his surviving spouse were the sole owners of the corporation and they elected him president. The husband continued to do repair work as before, and the officers authorized the corporation to pay him a salary. The corporation also had other employees.

Testimony was presented by the carrier to the effect that in November 1985, the surviving spouse called her insurance broker concerning the incorporation of the business and the necessity of obtaining workers' compensation insurance. This inquiry was referred to the managing agent, who met with the husband and his surviving spouse on November 6, 1985. At that time, the surviving spouse and her husband elected to exclude themselves from coverage under the workers' compensation policy, and the agent prepared an application reflecting this intent. The surviving spouse and the agent met again on November 26, 1985. At that meeting, the surviving spouse reaffirmed the exclusion, and other minor changes were incorporated in a new application. On December 3, 1985, the surviving spouse tendered a check for one-quarter of the estimated premium, and the broker issued an insurance binder. By mid-December 1985, a standard form insurance policy and endorsements had been delivered to the insured. The policy provided that the carrier would "pay promptly when due the benefits required of ... [the corporation] by the workers' compensation law." It also provided that "[t]erms of this insurance that conflict with the workers' compensation law are changed by this statement to conform to that law." One of the endorsements expressly excluded coverage for all corporate officers and further provided that the corporation would "reimburse us for any payment we must make because of bodily injury to such [excluded] persons."

The husband never signed a notice formally rejecting workers' compensation benefits before his fatal accident, which occurred on February 19, 1986. Approximately ten months after his death, the corporation changed its insurance carrier to the State Compensation Fund. The corporation again requested coverage which would exclude the surviving spouse. At that time, the State Compensation Fund advised her that in order to reject coverage, she would have to sign a written no-

---

1. Until August 1985, sole proprietors could not obtain such coverage. *See generally Curran v. Industrial Commission,* 156 Ariz. 434, 436, 752 P.2d 523, 525 (App.1988) (discussing A.R.S. § 23–901(5)(i) (Supp.1987)).

tice in the form required by A.R.S. § 23–906(B). After learning of this statutory requirement, she filed the claim that is the subject of these proceedings..

Based on the evidence presented, the administrative law judge denied compensation. He concluded that compliance with the statutory requirements was unnecessary in this particular case because the employer had adequate notice of the employee's intention to reject the act due to the practical identity of the corporate employer and the president-employee. After he affirmed his decision on administrative review, the surviving spouse sought review by this court.

On review, the surviving spouse asserts that A.R.S. § 23–906 prescribes an exclusive procedure for the rejection by an employee of workers' compensation coverage. She therefore contends that her husband could not have effectively rejected workers' compensation coverage by procuring, in his capacity as the corporation's president, a workers' compensation policy that expressly excluded corporate officers. Since the deceased was an employee as well as an owner and officer of the corporation, she argues that he was entitled to workers' compensation benefits because it is undisputed that he did not sign a notice rejecting coverage as required by the statute. Accordingly, she urges that her claim for survivor's benefits should have been accepted.

The statutory language strongly supports her argument. In relevant part, A.R.S. § 23–906 (Supp.1987) provides:

"A. Employers who comply with the provisions of § 23–961 or 23–962 as to securing compensation, and the employers' workers' compensation insurance carriers or administrative service representatives, shall not be liable for damages at common law or by statute, except as provided in this section, for injury or death of an employee wherever occurring, but it shall be optional with employ-

ees to accept compensation as provided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law.

"B. The employee's election to reject the provisions of this chapter *shall* be made by a notice in writing, signed and dated by him and given to his employer, in duplicate in substantially the following form:

"To (name of employer):

"You are hereby notified that the undersigned elects to reject the terms, conditions and provisions of the law for the payment of compensation, as provided by the compulsory compensation law of the state of Arizona, and acts amendatory thereto.

"C. The notice shall be filed with the employer prior to injuries sustained by the employee, and within five days the employer shall file with his insurance carrier the notice so served by the employee. All employees shall be *conclusively presumed* to have elected to take compensation in accordance with the terms, conditions and provisions of this chapter unless the notice in writing has been served by the employee upon his employer prior to injury." (Emphasis added.)

Subsection (B), which specifies the manner of rejection, employs the imperative word "shall." Furthermore, subsection (C) codifies a *conclusive presumption* of compensation coverage unless the statutory notice is provided. As the surviving spouse correctly observes, a conclusive presumption renders all other evidence of intent irrelevant. *See generally,* IX *Wigmore on Evidence* § 2492 (Chadbourn Rev.1981).

Underscoring this statutory language is the background of § 23–906. The statutory requirement of a *pre-injury* election of remedies is the product of a 1925 constitutional amendment.[2] *See* Arizona Const. art. 18, § 8; *see also Red Rover Copper*

---

**2.** Before the 1925 amendment, an injured worker could make an election of remedies after the injury. *See Consolidated Arizona Smelting Company v. Ujack,* 15 Ariz. 382, 139 P. 465 (1914); *see also, Industrial Commission v. Crisman,* 22 Ariz. 579, 199 P. 390 (1921) (striking 1921 legislation requiring pre-injury election).

*Co. v. Industrial Commission,* 58 Ariz. 203, 118 P.2d 1102 (1941). In *Red Rover,* the supreme court emphasized the exclusivity of the statutory scheme:

> "The constitutional amendment and the legislation enacted thereunder declare the public policy of the state of Arizona. No contractual consent, no statute of limitations, no laches nor estoppel can prevail against public policy, and any agreements made and any acts done in violation of it are necessarily void." *Id.* at 214, 118 P.2d at 1107.

Despite the statutory imperative and its historical context, the carrier argues that formal notice was dispensable in the present case because it would have been "ludicrous" to require a person to notify himself in his capacity as a corporate officer of his decision to reject workers' compensation benefits in his capacity as an employee. We disagree for two reasons. First, the statutory formality serves a purpose separate from that of actual notice. In addition to providing notice, it reinforces the importance of the election of remedies. The evidence in the present case illustrates how short-sighted economic considerations may result in a decision to exclude insurance coverage. The requirement of formal notice may help to protect the claimant "against his own improvidence or folly." *Sackolwitz v. Charles Hamburg & Co.,* 295 N.Y. 264, 268, 67 N.E.2d 152, 154 (1946), *cited in Worthington v. Industrial Commission,* 85 Ariz. 310, 316, 338 P.2d 363, 367 (1959). Second, the requirement of formal notice is no different than the requirement that corporate directors elect themselves officers or that corporate officers authorize the payment of salaries to themselves. It is simply a consequence of the corporate form of doing business.

We further note that strict compliance with the statute would eliminate factual controversies such as were presented in this case concerning whether the employee has in fact elected to reject workers' compensation coverage. Although the administrative law judge resolved the fact issues in

this case in favor of the carrier and found that both the surviving spouse and her deceased husband had requested that they be excluded from coverage, the surviving spouse testified that there had been no such request concerning her husband.

The carrier argues that allowing the surviving spouse to exploit a "loophole" results in a miscarriage of justice. To some extent, this is true. However, both the carrier and the independent broker involved in this case were in the insurance business. As a result they should have known the requirements for a legally effective rejection of workers' compensation coverage by an employee. (The State Compensation Fund, in contrast, immediately required the surviving spouse to execute a statutory rejection notice when she changed carriers.)

■ If it is assumed that an employee must file a signed notice as required by § 23–906 to reject coverage, the carrier further urges that the deceased, as the owner and principal officer of the corporation, was not an employee of the corporation within the contemplation of the workers' compensation act. The carrier chiefly relies on two Wisconsin cases in making this assertion. *See Duvick v. Industrial Commission,* 22 Wis.2d 155, 125 N.W.2d 356 (1963); *Leigh Aitchison, Inc. v. Industrial Commission,* 188 Wis. 218, 205 N.W. 806 (1925). This authority, however, is not applicable to the facts of this case. *See generally,* 1C A. Larson, Workmen's Compensation Law § 54.22 (1986). Arizona has consistently recognized that an owner and officer of a corporate employer may at the same time be an employee of the corporation. *See Williams v. Williams Insulation Materials, Inc.,* 91 Ariz. 89, 94–95, 370 P.2d 59, 63 (1962); *Dunwoody v. Industrial Commission,* 22 Ariz.App. 63, 65–66, 523 P.2d 114, 116–17 (1974). The result might be otherwise when corporate formalities are ignored. *See* 1C A. Larson, *supra* § 54.22 at 9–240; *but see* A.R.S. § 23–901(5)(i) (Supp.1987), which now permits coverage of a sole proprietor of a

business under certain circumstances. In the present case, there is no evidence that corporate formalities were not complied with. The deceased therefore was both an owner and officer of the corporation and a corporate employee within the meaning of Arizona's workers' compensation act.

For the foregoing reasons, we set aside the award.

GREER, P.J., and CORCORAN, J., concur.