911 P.2d 605

**Charles SEITZ, Petitioner Employee,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Arid Roofing, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 94–0119.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 12, 1995.

Review Denied Feb. 21, 1996.*

Kurth & Kurth, P.C. by Dennis R. Kurth, Phoenix, for petitioner.

Peter C. Kilgard, Chief Counsel, State Compensation Fund by Kirk A. Barberich, Phoenix, for respondents Employer and Carrier.

Anita R. Valainis, Chief Counsel, the Industrial Commission of Arizona, Phoenix, for respondent.

## OPINION

FIDEL, Judge.

Before sustaining the industrial injury that gives rise to this claim, Claimant agreed with his employer to reject workers' compensation in exchange for an alternative package of private insurance. Claimant now seeks rescission, alleging that the employer breached its promise to include disability insurance in the alternative package. The Industrial Commission rejected Claimant's position. We set aside the Commission's decision upon review.

### *Background*

Claimant was injured in a vehicular accident in 1993. The Respondent Carrier

("Fund") and Employer ("Arid") do not dispute that the injury arose out of and occurred in the course of his employment. They contest coverage on the solitary ground that, before the accident, Claimant rejected workers' compensation coverage.[1] That Claimant rejected workers' compensation coverage is undisputed. The parties went to hearing over the question whether Claimant's rejection was valid.

The Fund placed in evidence a standard form, signed by Claimant, entitled "Employee's Notice Of Rejection Of The Arizona Workers' Compensation Law." The form, dated March 19, 1991, preceded the accident by more than two years. The Fund also submitted evidence that two other employees and all of Arid's officers had rejected workers' compensation coverage. Claimant filed a certificate of catastrophic health insurance that was issued by American National Life Insurance Co. of Texas ("American"); the certificate did not list disability coverage among its benefits.

Claimant, his wife, Arid's insurance agent ("Moffett"), and Arid's President ("Miller") testified, as did the other employees who had rejected workers' compensation coverage. The testimony conflicted on the question whether Claimant was induced to reject workers' compensation by representations that the alternative benefit package was superior. The Administrative Law Judge ("ALJ") resolved this question, and subsidiary credibility questions, against Claimant; she found that Claimant had failed to prove "that he signed the rejection due to intimidation, fraud or coercion of any nature whatsoever." The ALJ's resolution of this issue is not challenged on review.

The significant question for the purpose of review is whether Claimant was provided disability insurance and, if not, whether he is entitled to rescind his rejection of workers' compensation and pursue this compensation claim.

Claimant and his co-employees testified that, when they accepted an alternative package, each believed the alternative included disability coverage. Claimant testified that he had not earned wages since the accident, had not received disability benefits from any source, and had received only partial coverage of his medical bills.

Claimant's wife testified that she handled the family paperwork because of Claimant's illiteracy. She estimated that Claimant's medical expenses were $63,000.00 and that American had paid only $50,000.00. She testified that she had not submitted a written request to American for information about disability coverage and that she received no written rejection of disability benefits from American. She testified, however, that she had telephoned American after the accident and that an unidentified person had told her that disability coverage was not included in Claimant's policy:

> Yes, I ... flipped out on the phone and I told them what did they mean that he wasn't getting any of his wages paid. I said, "This is supposed to be better than State Comp." And the lady tells me, "I'm sorry. I don't know what to do or anything but you do not have this in your policy, you don't have the coverage." And I kept going on and on to her but we didn't have it.

She also testified that Claimant subsequently contacted Miller to inquire about disability coverage, that Miller referred Claimant to Moffett, and that Claimant had been unable to reach Moffett.

Moffett, the agent, testified that he had discussed the alternative insurance package with Claimant and with some, but not all, other Arid employees. The package that he presented involved three different carriers: American for health coverage, Illinois Mutual for disability coverage, and Travelers for life insurance. Moffett testified that the package cost Arid less than workers' compensation coverage; that the medical coverage attempted to "match" workers' compensation coverage; that the life insurance was superior to workers' compensation death benefits; and that the disability coverage was inferior

---

1. The Administrative Law Judge refused to hear evidence on the extent and cause of injuries suffered by claimant, limiting the scope of the hearing to the threshold question whether Claimant was entitled to any compensation.

because it had a sixty-day waiting period, a two-year cap, and a maximum benefit of $1,200.00 a month. Moffett conceded that disability coverage was an important consideration to Claimant and said he did not know whether Claimant ever, in fact, obtained disability coverage. He explained that he left the agency before the insurance was placed and could not get additional information before the hearing because Arid's coverage was confidential.

Miller, Arid's president, testified that he paid one premium to American but never reviewed the policy to determine what coverage it provided. He agreed that the alternative insurance package should have included disability coverage.[2] Miller denied that Claimant inquired about disability coverage.

The ALJ denied compensability. She did not determine whether Claimant had been issued disability insurance, stating instead:

the reason why the applicant has not received disability benefits is unclear in the record. Apparently, there was disability coverage only if the accident was work-related. There was no evidence that the disability carrier knew that the accident was considered to be work-related. As far as the record is concerned, the claim was initially denied by the State Compensation Fund. If the disability coverage was never issued in the first place, the defendant employer was unaware of it. *The applicant was obligated to read his own policies. The applicant could have withdrawn his rejection of worker's compensation when he discovered the lack of disability coverage.*

(Emphasis added.) After exhausting the administrative review procedure, Claimant filed a timely petition for appellate review.

### *Was Disability Insurance Provided?*

 Longstanding Arizona authority establishes the Commission's power to void an improperly induced rejection of compensa-

tion. *Red Rover Copper Co. v. Industrial Comm'n*, 58 Ariz. 203, 118 P.2d 1102 (1941). The Commission's application of law and equity to such a question is subject to independent appellate review. *Id.*

In *Red Rover*, the employer conditioned employment on rejection of workers' compensation and misrepresented that alternative private insurance was superior to workers' compensation. The supreme court concluded that the Industrial Commission had correctly applied rules of equity by voiding the claimant's rejection. It stated:

No contractual consent . . . can prevail against public policy, and any agreements made and any acts done in violation of it are necessarily void. . . . [T]he election given to an employee to exercise his option must be a free and voluntary one, uninfluenced by intimidation, fraud or coercion of any nature whatsoever. . . .

*Id.* at 214–15, 118 P.2d at 1107.

Claimant argues that he is entitled to the equitable remedy of rescission of his rejection of compensation because Arid breached its agreement to provide disability insurance:

Whether one characterizes these facts as a failure of consideration, a mutual mistake of material fact, a lack of mutuality of obligation or fraud in the inducement, it is clear that Petitioner is entitled to rescind this contract and consider his rejection of workers' compensation void.

The Fund responds that the record reasonably supports the ALJ's finding that the reason Claimant did not receive disability benefits is unclear. We disagree.

Claimant and his counsel unquestionably could have conducted discovery more vigorously in order to determine whether Arid had honored its promise to provide disability insurance. Claimant did not depose Moffett or Miller before the hearing; nor did he

---

**2.** Miller added that this coverage should have extended only to work-related injuries and said he disagreed that Claimant's accident was work-related; the Fund, however, had conceded that issue for the purpose of the hearing.

Miller also disputed Claimant's testimony that he had not received any wages since the acci-

dent, stating that Claimant returned to work about ten days after his accident and continued working for his normal wage until he had knee surgery in October 1993. The ALJ made no findings of fact concerning this conflict.

request a subpoena duces tecum to compel Miller to produce insurance documentation.

■ The question, however, is not whether Claimant did all that he could have done, but whether he did enough. Claimant testified that he received no disability benefits. Moffett testified that the intended source of disability coverage was not American but Illinois Mutual. Miller testified that he paid a premium only to American. Claimant's wife testified that American told her there was no disability coverage. And Arid, which had ready access to any evidence that it had indeed secured such coverage, produced none. The only inference that could reasonably be drawn from this record is that Arid did not provide the disability coverage that it had promised. The ALJ unreasonably refrained from drawing this conclusion.

■ Assuming hypothetically, rather than finding, that disability coverage was not issued, the ALJ spared Arid the burden of its failure to honor its bargain and instead placed the burden on Claimant of not discovering Arid's lapse:

> The applicant was obligated to read his own policies. The applicant could have withdrawn his rejection of worker's compensation when he discovered the lack of disability coverage.

This conclusion was arbitrary, capricious, and contrary to both equity and law. It was undisputed at the hearing that Arid promised Claimant disability coverage as an integral part of the bargain for which he relinquished workers' compensation. If Arid failed to honor its promise, it is Arid, not Claimant, who must bear the loss.

### *Rescission*

■ Claimant claims he is entitled to rescind his revocation to remedy Arid's failure to provide disability coverage. We agree. The remedy of rescission, like restitution, requires a "vital" breach of contract, representing a "substantial failure of consideration." 5 Arthur L. Corbin, *Corbin On Contracts* § 1104, at 558 (1964); Dan B. Dobbs, *Handbook On The Law Of Remedies*

§ 12.23, at 911 (1973). This was a vital breach of contract.

■ Arid offered a package of three types of insurance coverage that, according to Arid's representations, approximated the coverage provided by workers' compensation. Absent the disability insurance, the alternative plan fell substantially short, leaving Claimant with no income protection when an injury rendered him unable to work. Because Arid's failure to provide disability insurance constituted a substantial or vital breach, claimant was entitled to rescind his rejection of workers' compensation, and an order of rescission was within the Commission's equitable power. *Cf. Red Rover Copper Co.*, 58 Ariz. 203, 118 P.2d 1102.

### *Conclusion*

For the reasons set forth above, we set aside the Commission's denial of compensability and remand for further proceedings consistent with this decision.

GARBARINO, P.J., and EHRLICH, J., concur.